**W. H. ARMSTON CO., Inc. v. COMMIS-
SIONER OF INTERNAL REVENUE.
ARMSTON v. COMMISSIONER OF
INTERNAL REVENUE.**

Nos. 13227, 13228.

United States Court of Appeals
Fifth Circuit.

April 25, 1951.

Warren F. Wattles, Jacksonville, Fla.,
for petitioners.

Abbott M. Sellers, Sp. Asst. to Atty. Gen.,
Theron Lamar Caudle, Asst. Atty. Gen.,
Ellis N. Slack, Sp. Asst. to Atty. Gen.,
Charles Oliphant, Chief Counsel, Bureau of
Internal Revenue, Bernard D. Daniels, Sp.
Atty., Bureau of Internal Revenue, Helen
Goodner, Sp. Asst. to Atty. Gen., Maryhel-
en Wigle, Sp. Asst. to Atty. Gen., Wash-
ington, D. C., for respondent.

Before HOLMES, McCORD and
STRUM, Circuit Judges.

McCORD, Circuit Judge.

These two cases present substantially sim-
ilar issues of law and fact, and since they
were consolidated by the Tax Court for
hearing and disposition, 12 T.C. 539, we will
accord them like consideration here.

Together the appeals involve corporate
income, declared value excess profits, and
excess profits taxes for the calendar years
1943 through 1945 in the aggregate amount
of $74,749.37, and individual income taxes
for the year 1943 in the sum of $15,041.02.

The principal question in the appeal in-
volving the corporate taxpayer is whether
the Tax Court properly held that a purport-

ed sale by W. H. Armston Company, Inc., in 1943 of certain equipment to the individual taxpayer, Catherine G. Armston, and her lease of the equipment back to the company at a certain rental, should be disregarded as a subterfuge for income tax purposes, so as to constitute the amounts paid as "rentals" for the equipment actually and in fact distributions of corporate earnings, rather than allowable deductions as ordinary and necessary business expenses under the provisions of Section 23(a) (1) (A) of the Internal Revenue Code, as amended, 26 U.S.C.A. § 23(a) (1) (A).

The main question presented by the appeal involving the individual taxpayer, Catherine G. Armston, is whether the Tax Court correctly found that the "rentals" received by her on the equipment during the tax years in question actually constituted corporate dividends taxable to her individually, as chief stockholder in the W. H. Armston Company, or whether they were deductible business expenses of the corporate taxpayer.

The material facts, briefly stated, reveal that W. H. Armston Co., Inc., is a Florida corporation organized September 29, 1930, and is principally engaged in construction work. W. H. Armston is president and treasurer of the Company, and his wife, Catherine G. Armston, is secretary.

During the tax period involved, Catherine G. Armston had no independent income of her own, other than a small salary, which she received from the Company. She was primarily a housewife, and performed only nominal duties for the Company. The papers which she signed as secretary of the Company were prepared by her husband for her signature, and whatever she did on behalf of the Company was on the advice of her husband. She had no authority to sign checks for the Company.

During the years 1940, 1941 and 1942, the Company purchased certain heavy equipment for use in its construction work which was very expensive. At that time it was engaged in a large amount of war construction for the government, which consisted mainly in clearing and building air fields in Florida for the Army engineers.

On February 1, 1943, at a special meeting of the board of directors of the Company, the president, W. H. Armston, called attention to the fact that although the company had enjoyed a good business year with respect to earnings from war construction projects, it was not good business for the company to have substantially all of its capital and surplus tied up in heavy fixed equipment when funds were needed for the payment of current debts and capital was required for payrolls on current and new business; that in view of current liabilities, and the large investment in fixed equipment, the Company might be embarrassed for want of ready cash, and for that reason some of the equipment should be sold and the cash realized therefrom be used as working capital. Accordingly, an offer was made by Catherine Armston whereby she agreed to purchase certain pieces of the heavy construction equipment owned by the Company, the price to be determined by the Company's book value as of February 1, 1943, provided the Company would agree to rent the same equipment back from Catherine Armston when it was needed for construction work. The rental rates were to be governed, under the terms of the agreement, by the ceiling price for the use of such equipment set by the O.P.A. After some discussion, the board of directors of the Company voted to accept the offer of Catherine Armston to purchase the equipment at a price of approximately $30,000.00, and authority was granted to her husband, W. H. Armston, to work out the details of the sale and the lease of the equipment back to the Company. W. H. Armston and his wife, Catherine Armston, then owned virtually all of the stock in W. H. Armston Company, Inc.

At the time of the above arrangement, the Company owned the equipment transferred, and owed very little on its remaining equipment. The purchase price of the equipment under the purported sale was later changed to $33,667.36. On the date of the transfer the equipment was worth considerably more than this O.P.A. ceiling price.

It was further shown that Catherine Armston did not have the funds necessary to finance an independent purchase of the

equipment at the time of the alleged transfer. Instead, she and her husband, W. H. Armston, went to the bank at Clearwater, Florida, and secured an individual loan to her in the amount of $32,000.00. The loan was secured by more than fifty per cent of the stock of W. H. Armston Co., Inc., which she then owned. The above amount was deposited in her personal checking account, and a check was written by her to W. H. Armston Co., Inc., covering the purchase price of the construction equipment, after which she was given a purported bill of sale to cover the alleged transfer.

It is without dispute that at the time the above loan was made, the bank had a balance sheet of W. H. Armston Co., Inc., which showed surplus and undivided profits amounting to $278,371.16, and approximately $21,000.00 cash on deposit, $15,000.00 of which was deposited in the Bank of Clearwater.

It becomes manifest that the bank would not have loaned the money to Catherine Armston on the strength of her stock if the Company's credit had been failing. Moreover, the equipment transferred would not have been sold on the open market with competitive bids. In fact, since the Company required the use of the equipment for its construction work, no sale of the equipment would have been permitted to an outsider, or anyone who might have dealt at arms length with the Company in the transaction.

Following the purported sale of the equipment to Catherine Armston, the Company leased the equipment back from her at O.P.A. ceiling price rates. The amounts paid to Catherine Armston by W. H. Armston Co., Inc., as alleged rentals for the equipment in question during 1943 aggregated approximately $72,505.45.[1]

We are of opinion the Tax Court correctly held that the purported sale and lease arrangement between W. H. Armston Co., Inc., and its majority stockholder, Catherine Armston, was without substance and effect for tax purposes. The alleged "rentals" paid to her for the use of the construction equipment during the tax period involved were not deductible business expenses of the corporate taxpayer, but were actually distributions of corporate profits taxable to her as income. The evidence here conclusively reveals that the Company's right to use the equipment supposedly sold to Catherine Armston was in no wise affected by the alleged transfer of title. The only logical motive and purpose of the arrangement under consideration was the creation of "rentals", which would form the basis for a substantial tax deduction, and thereby reduce the Company's income and excess profits taxes from the year 1943. It was merely a device for minimizing tax liability, with no legitimate business purpose, and must therefore be disregarded for tax purposes. See Interstate Transit Lines v. Commissioner of Internal Revenue, 319 U. S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596; cf. Commissioner of Internal Revenue v. Greenspun, 5 Cir., 156 F.2d 917, 920; Skemp v. Commissioner of Internal Revenue, 7 Cir., 168 F.2d 598.

The alleged "rentals" paid to Catherine Armston were properly regarded by the Tax Court as distributions to her of corporate earnings, taxable as individual income. See Limericks, Inc. v. Commissioner of Internal Revenue, 5 Cir., 165 F. 2d 483; cf. Commissioner of Internal Revenue v. Greenspun, 5 Cir., 156 F.2d 917, 921; Title 26, U.S.C.A., Section 22(a). Furthermore, there is no basis for the claim that Catherine Armston was entitled to a deduction in the year 1943 for depreciation on the equipment involved. Since the purported transfer of the equipment to her was without substance and effect for tax purposes, she had no depreciable interest in the property. The depreciation deductions claimed have been allowed by the Commissioner and the Tax Court to W. H.

1. The amounts accrued on the books of the Company for alleged rentals to Catherine G. Armston for the years 1944 and 1945 on the equipment in question were $48,861.75 and $46,763.50, respectively.

534

Armston Co., Inc., and it alone is entitled to the deductions for depreciation, as the real owner of the equipment. Cf. Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 60 S.Ct. 209, 84 L.Ed. 226; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L. Ed. 788; Limericks, Inc. v. Commissioner of Internal Revenue, 5 Cir., 165 F.2d 483.

■ The Tax Court correctly allowed the amendment asserting the increased tax deficiency resulting from the disallowance of the depreciation deductions claimed. The issue raised was not new, but was within the scope of the pleadings. We conclude it was timely filed. Cf. Commissioner of Internal Revenue v. Ray, 7 Cir., 88 F. 2d 891; Commissioner of Internal Revenue v. Erie Forge Co., 3 Cir., 167 F.2d 71, 76–77; Title 26 U.S.C.A. § 272(e).

The judgment in both appeals is

Affirmed.