246 F.2d 609
 Leon R. McKELVEY and Hilda E. McKelvey, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Robert K. PULSIFER and Dorothy Pulsifer, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 12128.
 No. 12129.
 United States Court of Appeals Third Circuit.
 Argued April 17, 1957.
 Decided August 1, 1957.
 Rehearing Denied September 17, 1957.
 
 George Craven, Philadelphia, Pa., for appellant.
 James P. Turner, Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., I. Henry Kutz, Attorney, Department of Justice, Washington, D. C., on the brief), for appellee.
 Before GOODRICH, STALEY and HASTIE, Circuit Judges.
 STALEY, Circuit Judge.
 
 
 1
 These petitions for review of decisions of the Tax Court present the question of whether the payment of a certain proportion of partnership profits to the estate of a deceased partner was intended as part of the consideration for a sale of all of the interest of the decedent to the surviving partners or represented a partner's distributive share.
 
 
 2
 Deficiencies in the income tax of petitioners were determined as follows:
 
 
 3
 1949 1950
 Leon R. McKelvey and Hilda E. McKelvey $11,315.98 $508.88
 Robert K. Pulsifer and Dorothy Pulsifer 2,188.36 97.76
 
 
 4
 The McKelvey Motor Company was a partnership formed on February 1, 1946, and engaged in the sale of new and used cars and the servicing of automobiles in the Lakewood, New Jersey, area. Until his death on November 9, 1948, Matthew R. McKelvey held a 36½ per cent interest in the partnership; his son, Leon R. McKelvey, held 51 per cent, and Robert K. Pulsifer owned 12½ per cent. The partnership agreement provided that if either Leon or Pulsifer became bankrupt or died, their respective shares were required to be sold to Matthew, the value to be determined by the book value of the assets. In the event of Matthew's death, however, his legal representatives had the option of continuing as partners if they so desired. Matthew's will contained a similar provision:
 
 
 5
 "I hereby authorize and empower my Executrix to carry on and continue my share of the business of the partnership of which I am a member, conducted under the name of McKelvey Motor Company for a period to be determined by my Executrix. I further authorize my Executrix, in her discretion, may offer [sic] my share in the aforesaid partnership to the two remaining partners, Leon R. McKelvey and Robert K. Pulsifer. The value of my said share shall be determined by the provisions of the partnership agreement relating to method of ascertaining the value of the respective shares of the partners."
 
 
 6
 Philomena McKelvey, the widow and executrix of Matthew McKelvey, was desirous of continuing as a partner in accordance with the provisions of the partnership agreement and the will. An obstacle was placed in her path by a representative of the Buick Motor Company who informed her that no franchise would be issued to a partnership in which an estate was one of the partners. The franchise from Buick which was issued to Matthew McKelvey expired October 31, 1948. Upon request by Philomena McKelvey, however, Buick agreed to continue the franchise on a temporary basis.
 
 
 7
 After the stand taken by Buick, Leon and Pulsifer began negotiations for the purchase of Philomena McKelvey's 36½ per cent interest in the enterprise. These negotiations culminated in an agreement entered into by the parties on December 28, 1948. The agreement, contemplating the formation of a new partnership composed solely of Leon and Pulsifer, was conditioned upon the issuance of the Buick franchise to Leon, and provided in pertinent part:
 
 
 8
 "1- The party of the First Part [Philomena McKelvey] agrees to sell the interest of the Estate of Matthew R. McKelvey in and to the partnership known as `McKelvey Motor Company', consisting of a thirty-six and one-half (36½%) per cent interest in the said partnership, to the parties of the Second and Third Parts, on the terms and for the consideration hereinafter specified.
 
 
 9
 "2- The consideration for the sale of said interest shall be a total cash consideration of Fifty Thousand ($50,000.00) Dollars. The said Fifty Thousand Dollars shall be paid Twenty Five Thousand ($25,000.00) Dollars in cash on signing this Agreement. The said Leon R. McKelvey shall pay Sixteen Thousand Four Hundred Thirty Eight and 35/100 ($16,438.35) Dollars, and Robert K. Pulsifer shall pay Eight Thousand Five Hundred Sixty One and 65/100 ($8,561.65) Dollars, making the aforesaid total of Twenty-five Thousand Dollars.
 
 
 10
 "3- As of January 3rd, 1949 the real estate in which the said Buick Sales Agency is conducted at 202 Main Street, Lakewood, New Jersey, shall be conveyed to Philomena McKelvey, Executrix as aforesaid, and she shall in turn, lease the said premises to the said Leon R. McKelvey and Robert K. Pulsifer, (the new partnership) for the term of one year. The lease shall specify a rental of thirty-six and one-half (36½%) per cent of the net profits of the said new partnership realized during the term of said lease. The lease shall provide a further rental consideration in that the lessee will transfer title to the lessor of a Buick Sedan, 1949, Model 56S Dynaflow, to be delivered on or before January 15th, 1949 if available, if not then available the lessee will deliver said car at the earliest time same becomes available.
 
 
 11
 "4-The said Philomena McKelvey, Executrix as aforesaid, agrees that on January 3rd, 1950, she will convey unencumbered title to the above mentioned premises at 202 Main Street, Lakewood, New Jersey, to the new partnership above referred to, and that the new partnership will execute a mortgage on the said real estate, to the said Philomena McKelvey, Executrix as aforesaid, in the sum of Twenty Five Thousand Dollars, which shall be given to secure two bonds, one made by Leon R. McKelvey in the sum of $16,438.35 and another made by Robert K. Pulsifer in the sum of $8,561.65. The said bonds are to bear interest at the rate of six per centum payable semi-annually, and the principal amounts of each bond shall be amortized in sixteen equal semi-annual installments. The said Leon R. McKelvey agrees to give a bond to the said Philomena McKelvey, Executrix as aforesaid, in the principal amount of $16,438.35 payable as aforesaid and secured by the said mortgage, and the said Robert K. Pulsifer agrees to give the said Philomena McKelvey, Executrix as aforesaid, a bond in the principal amount of $8,561.65 secured by said mortgage, and payable according to the terms aforesaid, with priviledge [sic] of accelaration [sic] of payment in mortgagor, except that the source of payment shall be business profits or personal funds.
 
 
 12
 "5-On the signing of this agreement, the said Philomena McKelvey, Executrix as aforesaid, will convey to Robert K. Pulsifer a twelve and one-half (12½%) per cent interest in the old partnerships [sic] personal property, and to Leon R. McKelvey a twenty-four (24%) per cent interest in the old partnerships personal property."
 
 
 13
 The book value of the interest of Matthew's estate in the assets of the partnership was $41,775.41; however, since all the parties agreed that this did not represent the fair market value, it was agreed that $50,000 would be paid.
 
 
 14
 The new partnership of Leon R. McKelvey and Robert K. Pulsifer was formed on January 3, 1949, soon after Leon was granted the Buick franchise. The interest of Leon in the new partnership was 75 per cent, and Pulsifer's interest was 25 per cent. In due course, the partnership conveyed the business premises to Philomena McKelvey in accordance with the agreement; they were reconveyed to the partnership on January 3, 1950. Payments were made to the executrix of the "rental" in the amount of $28,019.96, consisting of $26,029.23 as a 36½ per cent share of partnership profit during 1949 and $1,990.73, the value of the automobile conveyed to her. It was understood that none of the parties involved intended the leasing arrangement to be what it purported to be on its face. The new partnership did not deduct as a business expense on its partnership income tax return for the year 1949 the amount of "rental" paid over to the executrix.
 
 
 15
 The Tax Court found that the purpose of the agreement of December 28, 1948, was to effect a sale to the surviving partners of the 36½ per cent interest held by Matthew's estate; that $50,000 was paid for Matthew's proportionate interest in the partnership assets, and that the $28,019.96 was paid to the executrix for her right under the original partnership agreement and Matthew's will "to become, and to continue indefinitely, a member of the old partnership with all the rights of a partner, including those of participating in the conduct and operation of its business and participating in its net income to the extent of 36½ per cent."
 
 
 16
 The gravamen of petitioners' argument is that the entire interest of Matthew's estate was purchased for $50,000, and that the $28,019.96 was paid to the executrix on account of a contractual right to a share of partnership profits for the year 1949; in other words, the amount was received by her not for the acquisition of any interest Matthew had, but rather simply as a proportionate distribution of profits. The argument concludes that accepting the above premise, the recipient is taxable for the amount she received, but the surviving partners are not.
 
 
 17
 Both sides cite the Supreme Court opinion in Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, as controlling the disposition of this case in their favor. Although the facts of the Bull case are readily distinguishable from the present facts, it does contain, 295 U.S. at page 254, 55 S.Ct. at page 697, the pivotal legal proposition involved here:
 
 
 18
 "* * * We also agree that the sums paid his estate as profits earned after his death were not corpus, but income received by his executor and to be reckoned in computing income tax for the years 1920 and 1921. Where the effect of the contract is that the deceased partner's estate shall leave his interest in the business and the surviving partners shall acquire it by payments to the estate, the transaction is a sale, and payments made to the estate are for the account of the survivors. It results that the surviving partners are taxable upon firm profits and the estate is not. Here, however, the survivors have purchased nothing belonging to the decedent, who had made no investment in the business and owned no tangible property connected with it. * * *"
 
 
 19
 The reliance of both petitioners and respondent on the Bull decision emphasizes the importance of the determination of the factual issues involved in this case.
 
 
 20
 In the exercise of our reviewing function of determining whether the findings of fact of the Tax Court have a substantial basis in the record, we must look primarily to the evidence supporting the inferences made by the Tax Court, and not scan the record in an attempt to sustain a contrary inference suggested by a litigant. Commissioner of Internal Revenue v. Scottish American Investment Co., 1944, 323 U.S. 119, 124, 65 S.Ct. 169, 89 L.Ed. 113; Ferro v. Commissioner of Internal Revenue, 3 Cir., 1957, 242 F. 2d 838.
 
 
 21
 Petitioners seem to argue that because the right to receive a proportion of the 1949 profits arose out of contract, the payment of those profits must of necessity be treated as income to the recipient. We agree that the right to receive the proportion of profits is based upon contract, but this is not conclusive. The money was not received because of any partnership contract; Philomena McKelvey was not a member of the new partnership. Rather the money was received on account of the contract of sale, with part of the consideration contingent upon the amount of 1949 profits. Although at the formation of the contract, the total of profits for 1949, if any, could not be determined, the essential nature of the payment is consideration for the sale just as though a fixed amount were stipulated, and making the amount contingent upon the total profits for 1949 cannot transform the payment of consideration into a distribution of partnership profit.
 
 
 22
 There is an abundance of evidence in the record to support the finding of the Tax Court that the payment to the executrix of 36½ per cent of the partnership profits for 1949 was a part of the consideration for the sale of the entire interest of the decedent including the right of the executrix to continue indefinitely in the partnership. The entire transaction involved was essentially embodied in one complete instrument. This agreement of December 28, 1948, recited a sale of Philomena McKelvey's interest and recited a consideration for that sale. It was this same instrument which gave her a right to 36½ per cent of the profits for 1949, indicating that this payment also was part of the consideration for the entire sale.
 
 
 23
 The business of selling and servicing automobiles is one which requires the investment of capital on the part of those engaged in the enterprise. The withdrawal by Philomena McKelvey of her capital interest indicates that she was not to receive the proportion of the 1949 profit as a partnership distribution from a partnership of which she was not a member. This further demonstrates that the conveyance of the realty to her during the term of the agreement provided the security to assure the payment of the profits as a part of the consideration for the sale.
 
 
 24
 The right of Philomena McKelvey to continue as a member of the partnership had an obvious value to her, and on several occasions the record indicates she asserted this right. However, the economic importance to the petitioners of her withdrawal from the partnership was even greater, as emphasized by the refusal of Buick to grant a franchise to the partnership if she were a member. It was to their economic advantage that she withdraw, and for this advantage they were willing, and did in fact, pay as consideration a part of the profits for 1949. We conclude that the finding of the Tax Court to this effect was adequately substantiated by the evidence.
 
 
 25
 A secondary issue is presented concerning the allocation by the Tax Court of the part of the $50,000 which exceeded the book value of the estate's partnership assets. This excess was $8,224.59. In the absence of evidence by the petitioners upon which to base an allocation, and in reliance on the rule in Cohan v. Commissioner of Internal Revenue, 2 Cir., 1930, 39 F.2d 540, the Tax Court apportioned $4,250 to land, $3,724.59 to the building, and $250 to personal property. We see no clear error in this allocation in the circumstances of this case.
 
 
 26
 The decision of the Tax Court will be affirmed.