T.C. Summary Opinion 2011-8


UNITED STATES TAX COURT


RODGER L. GAMBLIN AND KATHLEEN J. BURCH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21480-09S.          Filed January 31, 2011.


Rodger L. Gamblin and Kathleen J. Burch, pro sese.

<u>Archana Ravindranath</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.  Pursuant to section 7463(b),
the decision to be entered is not reviewable by any other court,
and this opinion shall not be treated as precedent for any other
case.  Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the years at

issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes of $15,221 for 2004, $12,886 for 2005, and $3,859 for 2006. Respondent also determined that petitioners are liable for accuracy-related penalties under section 6662(a) of $3,044.20 for 2004 and $2,577.20 for 2005.

The parties agree that during the years 2004, 2005, and 2006, Rodger L. Gamblin (Dr. Gamblin) received gross Social Security benefits of $16,663, $17,108, and $17,809, respectively.[1] The parties also agree that petitioners are not entitled to deduct: (1) The $3,764 advertising expense claimed on Kathleen J. Burch's (Dr. Burch) Schedule C, Profit or Loss From Business, for 2004; (2) Dr. Gamblin's Schedule C legal and professional expenses of $1,077 for 2004; (3) Schedule C office expenses for Dr. Gamblin for 2004 in excess of those respondent allowed; and (4) Schedule C other expenses for Dr. Burch for 2004 and 2006 in excess of those respondent allowed.

Petitioners offered no evidence and made no argument with respect to deductions claimed on their Schedules A, Itemized Deductions, and Schedules C for: (a) Dr. Burch's legal and

---

[1] Adjustments to the taxable amount of Dr. Gamblin's Social Security benefits and to petitioners' itemized deductions, self-employment tax deductions, and self-employment taxes are computational and will be resolved consistent with the Court's decision.

professional services expense for 2006; and (b) self-employed health insurance expenses for 2004 and 2006. Petitioners also failed to offer any evidence or argument to contest respondent's determination that Dr. Gamblin had no gross receipts or sales for 2006. Thus, petitioners are deemed to have conceded these issues. See, e.g., Bradley v. Commissioner, 100 T.C. 367, 370 (1993); Sundstrand Corp. & Subs. v. Commissioner, 96 T.C. 226, 344 (1991); Rybak v. Commissioner, 91 T.C. 524, 566 n.19 (1988); Money v. Commissioner, 89 T.C. 46, 48 (1987); Leahy v. Commissioner, 87 T.C. 56, 73-74 (1986).

The parties further agree that petitioners are entitled to deduct on Dr. Burch's Schedule C: $3,439.83 of expenses for legal and professional services for 2004, and an additional $739 for 2004 over the amount respondent allowed for insurance (other than health).

The issues remaining for decision are whether petitioners are entitled to deduct on their respective Schedules C amounts in addition to those respondent allowed, and whether petitioners are liable for accuracy-related penalties for 2004 and 2005.

Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and the exhibits received in evidence are incorporated herein by reference. Petitioners resided in Ohio when the petition was filed.

## Background

Dr. Gamblin is, and was, during the years at issue, an inventor and "tinkerer" who holds 36 U.S. patents. Dr. Gamblin is currently working on a printing process involving "publication gravure inks". This printing process uses a special ink which is designed for use in a high-speed and high-quality printing process and is especially suited for printing large quantities of the same item. Dr. Gamblin is working on a formulation of this special ink that is both biodegradable and cheaper to use than current ink types.

In the 1990s Dr. Gamblin developed a device called a "cyclobelt" or "cyclomill", which is a grinding device that is unique in that a relatively cheap grinding medium rather than the machine itself is degraded during the grinding process. The cyclomill is also capable of grinding things that are "very hard", like diamonds, and it grinds them to "lower levels" than can be reached by other means. According to Dr. Gamblin, however, the Russians developed a process that "was a lot cheaper" than his process, and his "business kind of dried up."

Dr. Gamblin was able to rent a cyclomill to a company in Fairfield, Ohio, for $5,000 contingent on a review of its patent status. Dr. Gamblin retained a Cincinnati law firm, Wood, Herring, and Evans, to prepare a patent opinion document for the company's review. He received a rental payment of $5,000 in

2004. Petitioners, however, failed to report the $5,000 rental payment on their Federal income tax return for 2004.

During the years at issue Dr. Gamblin worked primarily on the gravure printing and other ink types. He also developed a hair shampoo which is a soap rather than a detergent so it will not dry out hair. Because soaps do not work well in hard water, Dr. Gamblin added a chemical agent to remove calcium from hard water.

Dr. Burch holds a Ph.D. in clinical psychology and was a sole practitioner from 1989 until her retirement in 2005. Dr. Burch practiced psychotherapy, but her main focus was psychological and neuropsychological assessment. She did a lot of work for defense attorneys and has taught neuropsychology at the University of Dayton. Dr. Burch maintained, for seeing patients, an office suite separate from her home consisting of two rooms, a waiting room and a "consulting room" that contained: (1) Two upholstered chairs; (2) one sofa; (3) a desk and chair set; (4) coffee and end tables; (5) a small bookcase; and (6) a small filing cabinet for current patient clinical files.

Dr. Burch saw patients at her office suite because she perceived it to be too dangerous to see patients in her home. However, she did all of her administrative work, insurance claim filing, billing, and report writing at home on weekends. The

psychological assessments she prepared required lots of paperwork and references.

Dr. Gamblin and Dr. Burch used overlapping portions of the home for their respective businesses.  Two bedrooms of the home were used for business.  The bedroom on the third floor contained a bed, but the bed was used for laying out in-process insurance forms for Dr. Burch's practice; it also contained a computer.  Outside of the third-floor bedroom in the hall were filing cabinets full of files.  In the "big" room on the second floor,[2] which had no bed, was Dr. Gamblin's "mail place" for his business, where there were a fax machine, a copier, lots of books and catalogs for his supplies, and references, as well as Dr. Burch's technical books.  In addition, there were stacks of boxes filled with insurance files and filing cabinets containing professional literature.

There was also a garage apartment where Dr. Burch wrote her reports and kept a technical library.  The garage apartment was about 21 by 17 feet and contained a computer and a "big plotter" that Dr. Gamblin used in his engineering pursuits.  The basement was used as Dr. Gamblin's "laboratory".  It had a microscope, a

---

[2]While Dr. Gamblin testified that the "big" bedroom was on the second floor, Dr. Burch inconsistently testified that the big bedroom they used was on the third floor.  The Court will treat Dr. Burch's testimony as having been given mistakenly.

"K-proofer" (a machine used to test prints), bottles of dyes, colorants, reagents, and more boxes of files.

Petitioners each filed Schedules C with their Federal income tax returns for 2004, 2005, and 2006. Dr. Gamblin filed a Schedule C for the "Dayton Tinker Company" and Dr. Burch filed her Schedule C as "Kathleen J. Burch, Psy. D."

## Discussion

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving that those determinations are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In some cases the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a). Petitioners did not argue or present evidence that they satisfied the requirements of section 7491(a). Therefore, the burden of proof does not shift to respondent.

Other Income

Section 6001 requires a taxpayer to maintain sufficient records to allow for the determination of the taxpayer's correct tax liability. Petzoldt v. Commissioner, 92 T.C. 661, 686 (1989). If a taxpayer fails to maintain or does not produce adequate books and records, the Commissioner is authorized to reconstruct the taxpayer's income. Sec. 446(b); Petzoldt v. Commissioner, supra at 686-687. Indirect methods may be used for

this purpose.  Holland v. United States, 348 U.S. 121 (1954).
The Commissioner's reconstruction need only be reasonable in
light of all the surrounding facts and circumstances.  Petzoldt
v. Commissioner, supra at 687; Giddio v. Commissioner, 54 T.C.
1530, 1533 (1970).

Respondent determined through a bank deposits analysis that
petitioners had unreported income for 2004 of $8,405 and for 2006
of $3,774.  Bank deposits constitute prima facie evidence of
income.  Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  The
bank deposits method of determining income assumes that all the
money deposited into a taxpayer's bank account during a specific
period constitutes taxable income.  Price v. United States, 335
F.2d 671, 677 (5th Cir. 1964).  The Commissioner, however, must
take into account any nontaxable source or deductible expense of
which he has knowledge.  Id.  The method employed is not
invalidated even if the calculations of the Commissioner are not
completely correct.  DiLeo v. Commissioner, 96 T.C. 858, 868
(1991), affd. 959 F.2d 16 (2d Cir. 1992).

Dr. Gamblin testified that he rented a cyclomill to a
company in Fairfield, Ohio, for $5,000 contingent on a review of
its patent status.  Dr. Gamblin testified that he received his
$5,000 payment in 2004.  Petitioners, however, failed to report
the rental earnings on their return for 2004.

Dr. Gamblin testified that "if you take that five thousand dollars out", and "depending on which day you closed it out * * * it is going to vary from year to year by two or three thousand dollars." Regarding 2005, Dr. Gamblin explained that "you know, there was more money that came out of the account than went in, the whole thing over the three year period pretty much balances out." Petitioners, however, offered the Court no other evidence to show that respondent's bank deposits analysis is incorrect. Respondent's determination on this issue is sustained.

Trade or Business Expenses

Section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Generally, no deduction is allowed for personal, living, or family expenses. See sec. 262. The taxpayer must therefore show that any claimed business expenses were incurred primarily for business rather than personal reasons. See Rule 142(a); Walliser v. Commissioner, 72 T.C. 433, 437 (1979).

To show that the expense was not personal, the taxpayer must establish that the expense was incurred primarily to benefit his business, and there must have been a proximate relationship between the claimed expense and the business. See Walliser v. Commissioner, supra at 437. Taxpayers are required to maintain sufficient records to establish the amounts of their income and

deductions.  Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001); sec. 1.6001-1(a), Income Tax Regs.  Petitioners, therefore, must produce evidence that they are entitled to the deductions they claim.

Where a taxpayer has established that he has incurred a trade or business expense, failure to prove the exact amount of the otherwise deductible item may not always rule out a deduction.  Generally, unless precluded by section 274, we may estimate the amount of such an expense and allow the deduction to that extent.  See Finley v. Commissioner, 255 F.2d 128, 133 (10th Cir. 1958), affg. 27 T.C. 413 (1956); Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930).  We cannot, however, estimate deductible expenses unless the taxpayer presents evidence sufficient to provide some rational basis upon which estimates may be made.  See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

### Office Expenses for Dr. Gamblin

Dr. Gamblin testified that he "didn't have receipts for every little thing" making up his office expenses.  Dr. Gamblin supplied respondent with canceled checks, Quicken sheets, and credit card billing records showing various expenditures.  He offered, however, no receipts to show that the expenditures were his office expenses for either 2004 or 2005.

Because there is insufficient evidence on which to base an estimate of Dr. Gamblin's office expenses, respondent's determination on this issue is sustained.

### Office Expenses for Dr. Burch

Dr. Burch deducted on Schedule C $3,467 for 2004, $3,341 for 2005, and $4,066 for 2006 as office expenses for her psychology practice. Of those deductions respondent disallowed $488 for 2004, $784 for 2005, and $2,460 for 2006. Petitioners provided canceled checks drawn to various payees but did not offer any evidence other than their own testimony that they are entitled to office expense deductions in excess of those respondent allowed.

### Expenses for Supplies for 2004 and 2006

Dr. Gamblin deducted $2,945 as expenses for supplies on his 2004 Schedule C of which respondent disallowed $788. For 2006, Dr. Gamblin deducted supplies expenses of $4,528 of which respondent disallowed $73. Dr. Burch deducted expenses for supplies of $4,866 on her 2006 Schedule C all of which respondent disallowed. Petitioners offered as evidence their own testimony and canceled checks payable to credit card companies, MBNA, GE Money Bank Credit Card, and Discovery. Petitioners have not shown that they are entitled to deduct expenses for supplies in excess of those respondent allowed.

Expenses for Insurance (Other Than Health)

Dr. Burch deducted $3,358 of expenses for insurance (other than health) on her 2004 Schedule C.  Respondent disallowed $2,860 of the deduction.  Petitioners provided canceled checks, bank statements, and withdrawals for multiple lines of insurance totaling $3,357.88.  Petitioners, however, failed to provide copies of the insurance policies.  Respondent agrees that petitioners are entitled to an additional deduction of $739 for 2004.  Petitioners have not shown that they are entitled to deduct insurance (other than health) expenses in excess of the amount respondent agreed to.

"Contract Labor" Expenses of Dr. Burch Treated as Schedule C "Income" of Dr. Gamblin

Dr. Burch deducted on her 2005 Schedule C $67,000 of "contract labor" expenses from her $82,479 gross income.  Dr. Gamblin reported on his Schedule C for 2005 gross receipts and gross income of $67,000.  Respondent adjusted petitioners' tax return, disallowing the deduction on Dr. Burch's Schedule C and removing the income in the same amount from Dr. Gamblin's Schedule C.

Petitioners allege that Dr. Burch paid Dr. Gamblin for performing administrative duties for her business.  Dr. Gamblin testified that the payment was related to his research and development for his inventions because he "would not be able to carry on except for the amount of money that was being furnished

by Dr. Burch's practice. I mean, she financed my operations". Dr. Burch testified that "we do work together. I work for Roger--well, I was a partner in his business, and he works for me."

There was no written contract for services between petitioners. Dr. Gamblin helped Dr. Burch with administrative duties in 2004 and assisted with "a few little things" in 2006 but did not report gross income for those years from Dr. Burch, nor did she claim deductions. Petitioners kept no records of the work that Dr. Gamblin performed for Dr. Burch, and Dr. Burch could not recall the rate at which she paid her husband. She was vague in her testimony as to how she determined the total amount to be paid to him. Petitioners offered no documentary evidence that Dr. Burch paid Dr. Gamblin $67,000 in 2005 or, if she did, that the amount was compensation for Dr. Gamblin's services.

On the other hand, Dr. Gamblin's testimony that he received money from his wife related to his research and development and that she "financed" his operations and Dr. Burch's testimony that she was "a partner in his business" leads the Court to conclude that any payments Dr. Burch may have made to Dr. Gamblin in 2005 were in the nature of capital expenditures rather than compensation for services. Generally, no deduction is allowed for capital expenditures. Sec. 263(a). Taxpayers may not deduct the costs of creating an intangible, like a patent or trademark, or of acquiring an interest in a partnership unless some

exception applies. Sec. 263(a)(1)(B); sec. 1.263(a)-4(b), (d)(1), (2), (5), Income Tax Regs.[3] "Capital expenditures are subsequently recovered through depreciation, amortization, cost of goods sold, as an adjustment to basis, or otherwise, at such time as the property to which the amount relates" is used, sold, or disposed of by the taxpayer. Sec. 1.263(a)-1(b), Income Tax Regs.

Because petitioners have not shown that the contested $67,000 was paid, was paid as compensation to Dr. Gamblin, or was expended for Dr. Gamblin's business, respondent's determinations on these issues are sustained.

Home Office Expenses

Drs. Gamblin and Burch each filed Forms 8829, Expenses for Business Use of Your Home, and claimed on their respective Schedules C home office expense deductions for all 3 years at issue. Respondent disallowed all of the home office expenses deducted by Dr. Gamblin and almost all of the home office expenses deducted by Dr. Burch.

Generally, section 280A(a) prohibits a taxpayer from deducting expenses for the use of a dwelling unit that is the

---

[3]Sec. 174(a)(1) allows a taxpayer to deduct certain research and experimental expenditures without consent of the Secretary for his first taxable year beginning after Dec. 31, 1953, and ending after Aug. 16, 1954, or at any time with consent of the Secretary. Sec. 174(a)(2). Petitioners' expenditures do not qualify for deduction under either provision.

taxpayer's residence.  But the prohibition on deductions does not apply to an item of expense allocable to a portion of the dwelling that is used "exclusively" and "on a regular basis" as the principal place of business of the taxpayer's trade or business.  Sec. 280A(c)(1)(A).

Assuming that a taxpayer has a qualifying trade or business, allowable home office deductions are strictly limited under the statute.  Home office expense deductions are limited to the amount of gross income from the use of the dwelling for a trade or business, reduced by the sum of the deductions allocable to the dwelling regardless of its use as the location of a trade or business and the allocable business expense deductions not related to the use of the dwelling itself.  See sec. 280A(c)(5).  Amounts not allowable on account of the limitation may be carried over to the succeeding taxable year subject to the limitation of that taxable year.  Id.

### Dr. Gamblin

The Court has sustained respondent's determination that Dr. Gamblin did not receive gross income from his inventing activity reportable on Schedule C for 2005, and he is deemed to have conceded that he had no Schedule C gross income for 2006.  Because Dr. Gamblin had no gross income from business in 2005 and 2006, his home office expense deduction for each of those years is zero.  See id.

Although Dr. Gamblin reported no gross income on Schedule C for 2004, the Court has found that he received gross income from business of $5,000 for the rental of his cyclomill. But respondent has allowed him as business deductions: (1) Car and truck expenses of $1,280 ($3,690 deducted less an adjustment of $2,410); (2) office expenses of $3,663 ($4,303 deducted less an adjustment of $640); (3) expenses for the rent or lease of other business property of $3,430 ($3,130 deducted plus an adjustment of $300); (4) supplies expenses of $2,157 ($2,945 deducted less an adjustment of $788); (5) travel expenses of $1,724 ($2,650 deducted less an adjustment of $926); and (6) meals and entertainment expenses of $140. After reduction of Dr. Gamblin's gross income of $5,000[4] for Schedule C expenses described in section 280A(c)(5)(B), his allowable home office expense deduction is zero, and the Court so holds. Respondent's determination on this issue is sustained.

Dr. Burch

Dr. Burch deducted as home office expenses on her Schedule C $44,514 for 2004, $2,798 for 2005 and $11,103 for 2006. Respondent disallowed $44,097 for 2004, $2,211 for 2005, and $10,286 for 2006. Respondent, by allowing Dr. Burch a portion,

[4]Although respondent determined that petitioners had unreported income of $8,405 for 2004 as determined by a bank deposits analysis, there is no evidence that all of it was earned by Dr. Gamblin. In any event, the total of Dr. Gamblin's sec. 280A(c)(5)(B)(ii) expenses alone exceeds $12,000.

albeit small, of the home office expenses that she deducted, has tacitly admitted that she qualifies for the deduction under section 280A and that only the amount is in question.

The Court finds that Dr. Burch's Forms 8829 overstate the home office expense deductions to which she is entitled. Some of the more prominent reasons include her calculation of home office expenses for 2004 to include a $28,346 "Carryover of operating expenses from 2003" for which she offered no evidence. Dr. Gamblin testified that when he entered Dr. Burch's home office expenses for 2004 into the tax return preparation software, the software "immediately took the accumulated back charges, and gave them to her." Dr. Burch also included in her calculations $13,223 for "Carryover of excess casualty losses and depreciation from 2003" for which she offered no evidence.

Dr. Burch's claimed deduction of $67,000 of contract labor expenses for 2005 was disallowed by respondent, and the disallowance is sustained by the Court. She will therefore have no carryover of operating expenses from 2005 to 2006.

Petitioners used overlapping portions of their home for their respective businesses. And both Dr. Burch and Dr. Gamblin deducted home office expenses on their Schedules C, claiming a combined use of 27.85 percent of their 6,570-square-foot home, or 1,830 square feet, for their respective businesses for 2004 2005, and 2006. Petitioners, as support for their deductions,

submitted photographs of the interior of their home (including the garage apartment), a diagram of the basement without dimensions, and diagrams with dimensions of the garage apartment and the first, second, and third floors of their home.

There is no evidence from which the Court can determine the area of the basement, most of which seems to have been used by Dr. Gamblin. The area of the third-floor bedroom is 104 square feet. The Court has no evidence on which to base a determination of the square footage of the hallway outside the third-floor bedroom that was used for file storage. According to the diagram that petitioners submitted, the area of the garage apartment is 367.5 square feet, and the area of the large bedroom on the second floor is 264 square feet. The total area of the three rooms used by both petitioners for business for which the Court has dimensions is 735.5 square feet.[5]

Dr. Burch, however, used only a portion of each of the rooms for her business. Petitioners did not provide the Court with evidence sufficient to determine the area of their respective portions of the rooms used for their businesses. The Court will estimate that Dr. Burch used 50 percent of the garage apartment and the two bedrooms, or 367.75 square feet for her business.

---

[5]Expenses attributable to use of a home office in conducting two or more separate businesses may be deductible where they each meet the requirements of sec. 280A(c)(1). Hamacher v. Commissioner, 94 T.C. 348 (1990).

See Cohan v. Commissioner, 39 F.2d at 544.  Any inexactitude in the estimate by the Court is of petitioners' own making and due to their failure to maintain proper business records.  See id. As 367.75 square feet represents 367.75/6,570, or about 6 percent of the total area of the home, Dr. Burch is entitled to 6 percent of her allowable expenses allocable to her use of a portion of her home as an office.[6]  See sec. 280A(c)(1); see also Culp v. Commissioner, T.C. Memo. 1993-270; Hefti v. Commissioner, T.C. Memo. 1988-22, affd. without published opinion 894 F.2d 1340 (8th Cir. 1989).

Car and Truck Expenses and Travel, Meals, and Entertainment Expenses

Certain business deductions described in section 274 are subject to strict rules of substantiation that supersede the doctrine in Cohan v. Commissioner, supra at 543-544.  See sec. 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  Section 274(d) provides that no deduction shall be allowed with respect to:  (a) Any traveling expense, including meals and lodging away from home; (b) any item related to an activity of a type considered to be entertainment, amusement, or recreation; or (c) the use of any "listed property", defined in

---

[6]It appears respondent's adjustments to increase petitioners' "home interest expense" deduction for each year will result in an increase in Dr. Burch's allowable home office expense deductions for each year.  The Court will leave the exact calculation for the Rule 155 computation.

section 280F(d)(4)(A)(i) to include any passenger automobile, unless the taxpayer substantiates certain elements.

For an expense described in one of the above categories, the taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony: (1) The amount of the expenditure or use; (2) the time and place of the expenditure or use; (3) the business purpose of the expenditure or use; and in the case of entertainment,(4) the business relationship to the taxpayer of each expenditure or use. See sec. 274(d).

To meet the adequate records requirements of section 274, a taxpayer must maintain some form of records as well as documentary evidence that in combination are sufficient to establish each element of an expenditure or use. See sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). "Documentary evidence" includes receipts, paid bills, or similar evidence. Sec. 1.274-5(c)(2)(iii), Income Tax Regs. A contemporaneous log is not required, but corroborative evidence to support a taxpayer's reconstruction of the elements of expenditure or use must have "a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record supported by sufficient documentary evidence. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985).

Dr. Gamblin's car and truck, travel, meal, and entertainment expense deductions, including meals and lodging away from home, are subject to section 274(d) and the regulations thereunder. The Court allowed petitioners to confer with respondent after trial in order to present any additional documentary evidence they might have that would be susceptible to stipulation.

Dr. Gamblin, in preparation for the posttrial meeting with respondent, created a travel log for his car and truck expenses and a log for his travel, meal, and entertainment expenses that he deducted on his Schedules C for 2004, 2005, and 2006. Dr. Gamblin testified at trial that he did not keep a log of each individual trip but instead at the end of the year he "would go off and check the mileage, and write it down on a slip of paper in the glove box." Nevertheless, the travel log lists apparent departure dates, destinations, a very brief "purpose of trip" and "nights" and "days", apparently away from home. Dr. Gamblin's log of travel, meal, and entertainment expenses lists an alleged check number and the costs of three instances of "air travel" and calculates per diem amounts based on the travel log.

Petitioners failed to provide copies of receipts, paid bills, or similar evidence. The Court finds that petitioners did not offer corroborative evidence to support their reconstruction of the elements of expenditure or use having "a high degree of probative value to elevate such statement" of events that

happened in 2004, 2005, and 2006 to the level of credibility of a contemporaneous record supported by sufficient documentary evidence. Respondent's determination on these issues is sustained.

Accuracy-Related Penalties

Section 7491(c) imposes on the Commissioner the burden of production in any court proceeding with respect to the liability of any individual for penalties and additions to tax. Higbee v. Commissioner, 116 T.C. at 446; Trowbridge v. Commissioner, T.C. Memo. 2003-164. In order to meet the burden of production under section 7491(c), the Commissioner need only make a prima facie case that imposition of the penalty or the addition to tax is appropriate. Higbee v. Commissioner, supra at 446.

Respondent determined that for both 2004 and 2005 petitioners' underpayments of portions of their income taxes were due to negligence or intentional disregard of rules or regulations. Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment of tax attributable to any one of various factors, including negligence or disregard of rules or regulations and a substantial understatement of income tax. See sec. 6662(b)(1) and (2). "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, including any failure to keep adequate books and records or to substantiate items properly. See sec.

6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. A "substantial understatement" includes an understatement of tax that exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. See sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs.

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for the year. Id.

Petitioners appear to have substantial understatements of income tax for 2005 and 2006 since the understatement amounts will exceed the greater of 10 percent of the tax required to be shown on the return or $5,000. Petitioners also failed to keep adequate books and records or to substantiate items properly, claimed itemized deductions and business expenses to which they were not entitled, and failed to report portions of their income. The Court concludes that respondent has produced sufficient

evidence to show that the accuracy-related penalties under section 6662 are appropriate for both years.

The accuracy-related penalties will apply unless petitioners demonstrate that there was reasonable cause for the underpayments and that they acted in good faith with respect to the underpayments. See sec. 6664(c). Section 1.6664-4(b)(1), Income Tax Regs., specifically provides: "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge and education of the taxpayer."

Petitioners, both of whom are highly educated, did not show that their underreporting of income and claiming of deductions were actions taken with reasonable cause and in good faith. Respondent's determinations of the accuracy-related penalties under section 6662(a) for 2004 and 2005 are sustained.

The Court has considered the other arguments of the parties, and they are either without merit or not necessary in view of our resolution of the issues in this case.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.