## NATIONAL COTTONSEED PRODUCTS CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6646.

Circuit Court of Appeals, Sixth Circuit.

April 11, 1935.

F. J. Albus, of Washington, D. C., for petitioner.

Robt. N. Anderson, of Washington, D. C. (Frank J. Wideman and Sewall Key, both of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

The petitioner seeks a review of an order of the Board of Tax Appeals (28 B. T. A. 67) sustaining a deficiency in income tax determined for the fiscal year ended June 30, 1926. It contends that the Commissioner erred in rejecting its claim for deduction from gross income of two separate items of $33,250 and $238,460, respectively. A further item of $4,600 disallowed was conceded before the Board to be deductible. The Board sustained the Commissioner as to both items in controversy.

As to the first item, the Board held that the $33,250, claimed to be deductible as interest due upon a corporate obligation, Revenue Act of 1926, § 234 (a) (2), title 26, U. S. C., § 986 (a) (2), 26 USCA § 986 (a) (2), in fact represented a part of the purchase price of certain shares of preferred stock.

The facts, which are conceded, are as follows:

The petitioner was incorporated on August 12, 1924. Upon July 21, 1925, it made an offer to the Phœnix Cotton Oil Company to purchase its assets for $750,000 of petitioner's seven per cent. cumulative preferred stock at its par value of $100 per share, and approximately $500,000 in cash, with which the seller's debts were to be paid. The stockholders of the Phœnix Cotton Oil Company rejected this offer. The petitioner, by a revised offer, agreed to repurchase at par its preferred stock given in payment, plus any accrued and unpaid dividends, on or before five years from date, and in any event at the rate of $150,000 per year. This offer was accepted on July 29, 1925.

To secure the repurchase of the stock, petitioners executed a trust agreement, impounding $1,800,000 of the bonds of the Phœnix Cotton Oil Company, to be acquired in the transaction, giving the trustee power to sell and distribute the proceeds of such bonds ratably to the stockholders of the Phœnix Cotton Oil Company, who were holders of petitioner's preferred stock, in case petitioner failed to fulfill its repurchase agreement.

In September, 1925, the petitioner went into receivership. During the receivership, on April 1, 1926, the first installment of the repurchase of petitioner's preferred stock became due. The Receiver, under court order, paid to the trustee for a ratable distribution, $150,000 plus the additional sum of $33,250. The latter sum equals the amount of dividends accrued on such preferred stock, and also exactly equals interest at seven per cent. upon the balance of the purchase price up to the date of such installment payment.

In sustaining the disallowance of this item, the Board erred as a matter of law. The contract of sale, the contract to repurchase the stock, and the contract of deposit of the bonds, constituted a single transaction. The original offer for purchase of the assets of the Phœnix Cotton Oil Company was refused because of lack of security for the stock to be used as payment. The agreement to repurchase the preferred stock and the agreement impounding the bonds of the Phœnix Cotton Oil Company were made with the purpose of supplying the security for the purchase price. This was the understanding of the petitioner, as shown by its letter of July 23, 1925, which stated: "Our proposition in a nut shell is to pay the debts of your Company with $500,000 cash, and pay its stockholders $750,000.00 with 7% at the minimum rate of $150,000 per annum, and to give the stockholders all of the properties of their Company as security for the $750,000." The offer was accepted after this letter was received. Since the proposition was to pay $750,000 "with 7%," and since the sum disallowed constituted exactly the interest agreed upon, it is interest upon a corporate obligation, deductible as such. Upon this point, therefore, the order of the Board must be reversed.

The second item ($238,460), involving the delivery by the petitioner to its former president of 2,000 shares of preferred stock and 3,846 shares of common stock, having an aggregate par value of $238,460, is claimed to be deductible because it was made "for services rendered from August 18, 1924, to June 30, 1926, to end litigation and to terminate five year contract."

On August 18, 1924, one Ed Cornish was appointed by the board of directors to act as president and general manager of the petitioner for five years, at a salary of $25,000 a year, with a bonus of two and a half per cent. of the net operating income of the corporation, plus a stock bonus of five per cent. of preferred and five per cent. of common stock of the petitioner, issued in payment for properties to be acquired. No written contract was executed because the parties never agreed whether Cornish was to receive the stock bonus immediately, or at the end of the five years' employment. Up to June 30, 1925, the time of closing its books, the petitioner had paid to Cornish compensation of $36,006.83, or at the rate of about $42,000 per year. Meanwhile dissension arose in the company. The directors wished to discharge Cornish. He paid himself and others various commissions for money borrowed. The principal cause of the receivership was that Cornish "overbought and used up all the quick assets of the company." The banks would not cooperate with the company because "they did

not trust Mr. Cornish." Under the receivership the company had a very profitable year.

In 1925 Cornish brought suit in the chancery court of Shelby County, Tennessee, against the petitioner, demanding compensation for the entire five years. This case was never heard upon its merits. In settlement of the suit, on June 22, 1926, the petitioner delivered to Cornish the preferred and common stock in question, all of which was treasury stock, charging $238,460 against its property account. Cornish shortly thereafter sold this stock for $174,679.25, including accrued dividends.

In its original petition, filed on August 19, 1929, the petitioner made no claim of deduction for the delivery of this stock, the value of which had been charged on the books to its property account. The item was first claimed to be deductible in the amended petition filed January 3, 1933.

The petitioner had the burden of showing that the Commissioner erred in his determination. Botany Worsted Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379; Commissioner v. Robertson, 75 F.(2d) 540 (C. C. A. 6).

It had to show that this expenditure was an ordinary and necessary expense paid or incurred in carrying on the business. Title 26, U. S. C., § 986 (a) (1), 26 USCA § 986 (a) (1). If it was considered as salary, it had to be reasonable. The contract was not conclusive upon this point. Botany Worsted Mills v. United States, supra; Samuel Heath Co. v. United States (Ct. Cl.) 2 F. Supp. 637; Alexander Sprunt & Son, Inc., v. Commissioner, 64 F.(2d) 424 (C. C. A. 4).

The reasonableness of the contract was to be determined in the light of existing circumstances. Austin v. United States, 28 F.(2d) 677 (C. C. A. 5). The corporation had refused to execute the written contract with Cornish because the directors thought that Cornish should receive this stock only at the completion of five years' service. He actually worked ten and a half months, for which he received over $36,000. His services were not considered efficient. The additional compensation represented by the delivery of such a large block of stock was not shown to be reasonable.

The order of the Board of Tax Appeals as to the item of $33,250 is reversed. As to the item of $238,460, the order is affirmed.