## HARDEN MORTGAGE LOAN CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2700.

Circuit Court of Appeals, Tenth Circuit.
July 20, 1943.

George E. H. Goodner, of Washington, D. C. (Scott P. Crampton, of Washington, D. C., on the brief), for petitioner.

Warren F. Wattles, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals, now the Tax Court of the United States.[1] It involves Federal income taxes for the year 1938 of the Harden Mortgage Loan Company.[2] In 1938, the taxpayer made certain expenditures for which in its return it claimed deductions as ordinary and necessary business expenses. The Commissioner disallowed the deductions and proposed a deficiency. The Tax Court sustained the ruling of the Commissioner and decided that there was a deficiency of income taxes for the year 1938 of $8,298.08.

The United States Asphalt Company[3] owns a rock asphalt mine located at Dougherty, Oklahoma. Rock asphalt is a blend of limestone rock and asphalt and of sand rock and asphalt and is used as a road-building material. It is sold principally to cities, counties, and states. From prior to 1936 to and including 1938, John J. Dempsey was the president of United and devoted a portion of his efforts to creating a demand for the product of the mine.

---

[1] Hereinafter referred to as the Tax Court.

[2] Hereinafter called the taxpayer.

[3] Hereinafter called United.

From January 1, 1936 through 1938, the taxpayer operated the rock asphalt mine as lessee of United. During that period the taxpayer had the exclusive right to sell the output of the mine in Oklahoma and Louisiana. There was no other mine in Oklahoma or in states adjacent thereto which produced rock asphalt of a like quality. However, the taxpayer sold rock asphalt in competition with other road-building materials.

The lease provided that the lessee should mine and deliver at cost, f. o. b. cars at Dougherty, Oklahoma, all material for which United should furnish orders from states other than Oklahoma and Louisiana.

In 1934, the taxpayer entered into an oral contract with C. S. Beekman whereby Beekman agreed to act as sales agent for the taxpayer in Oklahoma and to promote sales of rock asphalt produced by the taxpayer. The contract provided that Beekman should receive a commission of 10 per cent on sales in Oklahoma, and that such commissions should be due and payable when the taxpayer received payment for the rock asphalt sold. It continued through the year 1938. It was Beekman's specific duty to get the State Highway Commission of Oklahoma to specify rock asphalt for highway construction projects or to prescribe specifications that only rock asphalt could meet and to secure contracts for the purchase of rock asphalt. Rock asphalt was sold at a uniform price of $4.25 per ton f. o. b. the mine. It was immaterial to the taxpayer whether the material was sold to the contractor or directly to the state and it paid Beekman a commission on all rock asphalt purchased for use on highways in Oklahoma.

In the early part of 1938, Beekman's eyesight failed and he needed assistance in carrying on his business. His brother assisted him for a short time. Shortly after the Oklahoma State Legislature adjourned in the early part of 1938, Beekman formed a partnership under the name and style of C. S. Beekman & Co., composed of Allen G. Nichols, J. C. Nance, Howard Drake, Beekman, and two other persons. Nichols was a member of the Oklahoma Senate and the majority leader thereof. Nance was a member of the Oklahoma House of Representatives and the majority leader thereof. Both the Senate and House were Democratic. Drake was a prominent member of the Democratic party in Oklahoma and active in state politics. He had managed the campaign for the election of Ernest W. Marland who was Governor of Oklahoma from 1935 to 1938, inclusive, and a member of the Democratic party.

In January, 1938, Beekman was short of funds and requested the taxpayer to make an advance to him on commissions earned but not due. The taxpayer did not have funds with which to pay Beekman but assigned to the partnership, at face value, certain claims which it had against the state, aggregating $16,893.70. In 1938, the taxpayer also paid to the partnership $16,044.05 as commissions on other sales made by Beekman in 1938. The claims were assigned and the payments made to the partnership at Beekman's request. Nichols and Nance each received one-fourth of the profits of the partnership. The record does not disclose how the remaining profits were divided. One of the amounts deducted as ordinary and necessary business expense was the $32,937.75 paid to the partnership.

One method employed to promote the sale of rock asphalt was to induce the people living in the vicinity of a proposed highway project to demand the construction of the highway and the use of rock asphalt as road material. In 1938, Nichols, Nance, and Drake engaged in that activity and caused many delegations of citizens to go to the Highway Commission and request the construction of highways and the use of rock asphalt in their construction.

The record discloses that while the contract fixed the commission at 10 per cent, in 1938 commissions on sales to the State Highway Commission were paid on the basis of 15 per cent and on sales to private contractors on a basis of 17½ per cent.

Nichols, Nance, and Drake were very active in promoting the specification of rock asphalt by the State Highway Commission and in increasing the sale of rock asphalt.

The Tax Court found that a portion of the claimed deduction was paid for the exertion of political influence. The rate of commissions paid in 1938 on sales to the Highway Commission was 50 per cent in excess of the contract rate and on sales to private contractors 75 per cent in excess of such rate. No explanation was given for this increase. R. D. Farmer, vice-president and general manager of the taxpayer, knew Nichols, Nance, and Drake and was fully cognizant of their political

284

prominence and their influence in Democratic party circles. Beekman was largely incapacitated and was unable to carry on his usual duties. It is obvious that Beekman, in selecting the personnel of the partnership, was largely dominated by considerations of political influence. In 1938, he united, in behalf of the taxpayer, powerful political forces; and for the sales on which commissions accrued in 1938, the taxpayer paid the partnership amounts very largely in excess of the contract commission rate. The proven facts and the reasonable inferences deductible therefrom justified the finding of the Tax Court.

 Payments made for exerting political influence are not ordinary and necessary business expenses.[4] The burden was upon the taxpayer to establish its right to the deduction.[5] It may be that some portion of the amounts paid to the partnership was actual selling commissions, but the burden of proving the deductible amounts and segregating them from the non-deductible was upon the taxpayer and it did not meet that burden.[6] We conclude that the Tax Court did not err in disallowing the deduction of the amounts paid the partnership, as ordinary and necessary business expenses.

In 1938, the taxpayer paid to Dempsey $6,000. Payments were made by checks, one for $2,000 issued in July, one for $1,000 issued in July, two for $1,000 each issued in August, and one for $1,000 issued in October. The $6,000 paid Dempsey was the other amount claimed as a deduction for ordinary and necessary business expenses. The $6,000 was charged on the books of the partnership to entertainment and travel expenses. The proof established that Dempsey, from time to time, rendered services to the taxpayer in connection with freight rates and demurrage claims. There was no proof that Dempsey actually rendered any services to the partnership in 1938. The taxpayer wholly failed to establish that the payments made to Dempsey in 1938 were for ordinary and necessary business expenses. Hence, the taxpayer failed to carry the burden of proving facts establishing its right to the deduction.[7]

The decision of the Tax Court is affirmed.

---

[4] Tr.Reg. 101, Art. 23(q)-1; Textile Mills Securities Corp. v. Commissioner, 314 U.S. 326, 336–339, 62 S.Ct. 272, 86 L.Ed. 249; Rugel v. Commissioner, 8 Cir., 127 F.2d 393, 395.

[5] Birnbaum v. Commissioner, 7 Cir., 117 F.2d 395, 396; Long Island Drug Co. v. Commissioner, 2 Cir., 111 F.2d 593, 595; National Cottonseed Products Corp. v. Commissioner, 6 Cir., 76 F.2d 839, 841.

[6] Commissioner v. Hills Corporation, 10 Cir., 115 F.2d 322, 324; Josey v. Commissioner, 10 Cir., 104 F.2d 453, 455; Blackwell Oil & Gas Co. v. Commissioner, 10 Cir., 60 F.2d 257, 258; Houston Natural Gas Corp. v. Commissioner, 4 Cir., 90 F.2d 814, 817; Richmond Hosiery Mills v. Commissioner, 5 Cir., 29 F.2d 262, 263.

[7] Birnbaum v. Commissioner, 7 Cir., 117 F.2d 395, 396, and cases cited in Note 5.