**DAWSON v. STATE.**

No. A–11994.

Criminal Court of Appeals of Oklahoma.

July 14, 1954.

Percy Hughes, Hobart, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Ass't. Atty. Gen., for defendant in error.

JONES, Judge.

The defendant, Felix Dawson, was charged by an information filed in the District Court of Kiowa County with the unlawful possession of whiskey, a second offense, was tried, convicted and pursuant to the verdict of the jury, was sentenced to

serve 60 days imprisonment in the county jail and pay a fine of $150.

The sole question presented by this appeal is whether the trial court erred in refusing to give an instruction requested by the defendant which reads:

"You are instructed that the possession of any amount of intoxicating liquor for the express purpose of giving away or otherwise furnishing, which would include the lending of whiskey, is not a violation of the law within the meaning of the statute unless it be found beyond a reasonable doubt that the giving away or otherwise furnishing such whiskey was a subterfuge for a sale. You are therefore instructed, if you find and believe from the evidence, that the defendant had possession of the intoxicating liquor involved in this case for the express purpose of lending the same to another person without hope of profit and not as a subterfuge for a sale, it would be your duty to find the defendant not guilty."

The evidence of the State showed that two deputy sheriffs armed with a search warrant made a search of the home of the defendant on December 22, 1951, and found 8 pints of whiskey in a paper sack lying on the divan in the front room of the home. The defendant was personally present at the time the liquor was found. The State further showed that the defendant had been convicted on September 24, 1947, for the offense of unlawful possession of whiskey and was sentenced to serve a term of 30 days in jail and pay a fine of $50.

On behalf of the accused one of the attorneys for the defendant testified that he and his wife were having a Christmas party for about 150 people; that he had ordered a case of whiskey from a bootlegger in Tillman County, but when the case of whiskey arrived, it was 3 quarts short. That he was afraid he might run out of whiskey with so many guests coming to his house, and he further testified:

"I went out to Felix's home and asked Felix if he had any liquor he could lend me; I told him the situation, told him I would just like to borrow some liquor to fill out in case I needed it, and I said if I don't need it, I'll bring it back to you. So he said, 'No, I don't have any'; and he said, 'If you will come back in about fifteen minutes I'll see if I can't rustle you some.' I explained to him that I wanted to borrow it, and if I didn't use it I would bring the same liquor back, and if I did use it, this man that had short potted me promised to send it the next day; that I would replace it, let him have it back. He said he didn't have any there at all, and if I would come back in fifteen minutes he would see if he could find some for me, and I went home and fooled around twenty minutes, then I went back in twenty minutes. When I got back to his house I knocked on the door, and his wife was sitting in a chair with a youngster in her lap, and she said, 'Come in.' I came in and looked around and didn't see Felix, and I asked her if Felix got the liquor that I asked him to get for me and she said, 'Yes,' and she sat there and didn't say anything, and I said, 'Where is it?' and she said the sheriff came and got it and Felix both and took them down to jail. So, that's all there was to it."

The witness further testified that he was merely borrowing the whiskey and not buying it, and that he promised the defendant that he would pay him back in kind for the whiskey which defendant was furnishing to him. The defendant testified:

"Q. What kind of an understanding did you have with Mr. Hughes about the whiskey? A. He said he wanted to borrow it, would pay me back if he didn't use it, and if he did use it he would get some and pay me back. * *

"Q. Were you expecting money? A. No, if I had I wouldn't have loaned it to him; would have sold it to him."

In support of his contention that the court erred in refusing to give the requested instruction, counsel for the defendant cite the case of Tracy v. State, 9 Okl.Cr. 532, 132 P. 692, wherein it was held:

"An information which charges that the accused did sell, give away, and

otherwise furnish intoxicating liquors only charges a sale; the giving away and otherwise furnishing feature being surplusage."

and Findley v. State, 11 Okl.Cr. 275, 145 P. 1107, wherein this court held:

"County attorneys desiring to prosecute for giving away or furnishing intoxicating liquor as provided by the prohibitory law must follow the rule announced in Scott v. State, 6 Okl.Cr. 492, 119 P. 1023, and reaffirmed in Tracy v. State, 9 Okl.Cr. 532, 132 P. 692. The rule is clear, and works no hardship upon the state."

In the body of the opinion it was stated:

"The statute penalizing the giving away of intoxicating liquor contemplates the doing of such act as a subterfuge for a sale. The doctrine ejusdem generis controls in this class of cases. Facts sufficient to show that intoxicating liquor was given away within the meaning of the statute—that is, as a subterfuge for a sale—must be pleaded. Simply stating that the accused person did give away intoxicating liquor in violation of law is not sufficient. Administering whiskey to a person ill, or giving alcohol[ic baths] to hospital patients, which could not by any reasonable deduction be held to come within the purview of the statute, would be crimes under the character of information disclosed by this record, if such information can be sustained."

■■ The prohibitory ordinance of the State Constitution was adopted by a vote of the people and has been a part of the Constitution since statehood. It does not prohibit the possession of intoxicating liquor, but it does prohibit "the manufacture, sale, barter, giving away, or otherwise furnishing, except as hereinafter provided, of intoxicating liquors", O.S.1951 Const. art. 1, § 7, and provides for punishment for a violation of the act. Within the constitutional provision there was written certain exceptions permitting the sale or furnishing of intoxicating liquors under the conditions named in the Constitution for medicinal, industrial and scientific purposes. This

ordinance is self-executing and prosecutions could be instituted under it. Moss v. State, 4 Okl.Cr. 247, 111 P. 950; Ashcraft v. State, 68 Okl.Cr. 308, 98 P.2d 60.

■ In 1907 the Oklahoma Legislature passed a law in conformity with the constitutional provision which as amended in 1933 now appears in our code as Title 37, § 1. This statute provides:

"It shall be unlawful for any person, individual or corporation to furnish, except as in this chapter provided, any spirituous, vinous, fermented or malt liquors, or any imitation thereof or substitute therefor, or to manufacture, sell, barter, give away or otherwise furnish any liquors or compounds of any kind or description whatsoever whether medicated or not which contain more than three and two-tenths (3.2%) per cent of alcohol, measured by weight, and which is capable of being used as a beverage, except preparations compounded by any licensed pharmacist, the sale of which would not subject him to the payment of the special tax required by the laws of the United States; or to ship, or in any way convey, such liquor from one place within this state to another place therein except the conveyance of a lawful purchase as herein authorized; or to solicit the purchase or sale of any such liquors, either in person or by sign, circular, letter, card, price list, advertisement, or otherwise, or to distribute, publish, or display any advertisement, sign or notice where any such liquor may be manufactured, bartered, sold, given away, or otherwise furnished, *or to have the possession of any such liquors with the intention of violating any of the provisions of this chapter.* * * *" (Italics supplied.)

Prosecutions for the possession of intoxicating liquor are filed under this chapter of the code and insofar as the statute refers to the possession of intoxicating liquors, it states:

"It shall be unlawful * * * to have the possession of any such liquors with the intention of violating any of the provisions of this chapter."

Before the possessor of intoxicating liquors may be convicted for illegal possession of such liquors, the proof must establish that he intended to violate one of the provisions of the prohibitory laws, some of which are enumerated in Title 37 O.S.1951 as follows:

1. "To furnish, except as in this chapter provided".

2. "To manufacture, sell, barter, give away or otherwise furnish".

3. "To ship, or in any way convey, such liquor from one place within this state to another place".

4. "To solicit the purchase or sale of any such liquors".

5. "To barter, sell or give to any minor, person of unsound mind, or habitual drunkard".

6. "To directly or indirectly, keep or maintain * * * any club room or other place in which any liquor * * * is received, kept or stored, for the purpose of selling * * *, or for distribution or division among members of any club or association by any means whatsoever".

In many of the early cases that were commenced under the original statute, the prosecution failed because of the inability of the prosecutor to show that the possessor of the intoxicating liquor had an unlawful intent to violate the prohibitory laws, it being held that the intent with which intoxicating liquors were had was an essential element of the crime of unlawful possession and proof of both the possession and intent to violate some provision of the prohibitory law was indispensable to a conviction for the unlawful possession of such intoxicating liquor. Quinn v. State, 8 Okl.Cr. 478, 128 P. 1104. The proof of unlawful intent sometimes presenting an insurmountable obstacle in the prosecution for the unlawful possession of intoxicating liquor, the Oklahoma Legislature in 1913, Laws 1913, Chapter 26, Page 48, § 6, passed the law providing that the keeping in excess of one quart of spirituous, vinous, fermented or malt liquors, "shall be prima facie evidence of an intention to convey, sell or otherwise dispose of such liquors". 37 O.S.1951 § 82.

The two cases relied upon by defendant, hereinabove cited, involve the alleged sale of intoxicating liquor. Without elaboration, this court in its opinion stated that the doctrine of ejusdem generis controlled in the interpretation of the statute and that where the proof shows the "otherwise furnishing" of intoxicating liquor, the information must plead facts to show that the "otherwise furnishing" of such liquor within the meaning of the statute was as a subterfuge for sale.

Black's Dictionary, Third Edition, states:

"In the construction of laws, wills, and other instruments, the 'ejusdem generis rule' is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned."

In the case of Wilkins v. State, 70 Okl.Cr. 1, 104 P.2d 289, 298, this court stated:

"It is contended by defendant that the rule of 'ejusdem generis' excludes school district officers from the general terms of the act. By this term it is meant that where a particular class is mentioned, and this is followed by general words, the class first mentioned is to be taken as the most comprehensive and controlling, and that the words last mentioned are governed by those first mentioned; and that they refer to and should be held to mean only what is referred to specially in the first class. This rule has been recognized as a general rule of construction and is supported by authority and reason. But this rule has always been recognized as a guide to the courts in ascertaining the legislative intent. The true intent of what the legislature meant by the use of the terms used in the statute is the controlling element and the desire of the court to ascertain."

The contention of the defendant is not without substantial merit, and counsel for the State in their brief have failed to give the question the serious consideration which

it deserves. As stated by counsel for the defendant in his brief, "It was no more unlawful for defendant to have possession of the whiskey for the purpose of lending it than it was for Mr. Hughes to have had possession of the same whiskey for the purpose of furnishing it to his guests." If defendant is correct in his interpretation of the statute, then the possession of intoxicating liquor is not illegal in any case except where there is an intention to sell such liquor. We do not believe the statute is this limited in its scope, nor was it the intention of the Legislature to so limit it.

We have held in many cases that the possession of intoxicating liquor by an individual for his own personal use is not unlawful. Thomas v. State, 70 Okl.Cr. 404, 106 P.2d 836; King v. State, 81 Okl.Cr. 278, 163 P.2d 248; Edwards v. State, 83 Okl.Cr. 370, 177 P.2d 131. However, under the statute, that seems to be the only purpose for which intoxicating liquor might be possessed without violating some provision of the prohibitory laws. It seems readily apparent that at statehood the majority of the people of Oklahoma were in favor of a dry state and the Legislature enacted laws for the suppression of the traffic in intoxicating liquors in accordance with the wishes of a majority of the population. The legislation enacted in pursuance of that policy apparently intended to prohibit the possession of intoxicating liquor for every purpose except for the personal use of the possessor, and the possessor was not legally allowed to convey it from one place in the state to another place. This was the early holding of the Criminal Court of Appeals of this state as expressed in the case of Titsworth v. State, 2 Okl.Cr. 268, 101 P. 288, 291, wherein it was stated:

"Section 1, art. 3, of the enforcement act, makes it 'unlawful for any person, individual, or corporation * * * to have the possession of any such liquors with the intention of violating any of the provisions of this act.' This is a general law, and applies to all persons alike. It includes all classes and occupations. It is, in no sense of the word, an attempt to single out any special person or class or occupation of persons. It is absolutely uniform in its operations throughout the state, and is clearly within the police power of the state. *Any person, it matters not what his or her occupation may be, who has in his or her possession any intoxicating liquors in this state, except for personal use, can be lawfully prosecuted and convicted under this statute. All stand upon a perfect equality.*" (Italics supplied.)

The same rule has been reiterated many other times. In the case of Busby v. State, 74 Okl.Cr. 309, 125 P.2d 775, it was held:

"The possession of any amount of intoxicating liquor, is unlawful, if the possession is for the purpose and with the intent of 'selling, conveying, or otherwise disposing of same' in violation of law."

See also Pixler v. State, 54 Okl.Cr. 9, 13 P.2d 875; Golden v. State, 75 Okl.Cr. 121, 129 P.2d 202; Williams v. State, 34 Okl.Cr. 1, 244 P. 202; Estes v. State, Okl.Cr., 242 P.2d 459; Anderson v. State, 63 Okl.Cr. 443, 75 P.2d 914; Botts v. State, 29 Okl.Cr. 105, 232 P. 965; Whitwell v. State, 72 Okl. Cr. 192, 114 P.2d 489; Morse v. State, 63 Okl.Cr. 445, 77 P.2d 757. Applying the above conclusions to the facts in the instant case, we find that under defendant's proof he was guilty of a violation of the prohibitory laws in this, to-wit: "He had the possession of 8 pints of whiskey with the intention of bartering the same."

Black's Law Dictionary, Third Edition, defines barter as follows:

"A contract by which parties exchange goods or commodities for other goods. It differs from sale, in this: that in the latter transaction goods or property are always exchanged for money."

In the case of Commonwealth v. Davis, 12 Bush 240, 75 Ky. 240, which involved the alleged offense of giving intoxicating liquor to a minor, it was stated:

"To sell property is, in the strict significance of the word 'sell,' to transfer it from one to another, in consideration of a price paid or agreed to be paid in current money. *A sale differs from*

*a barter in this, that in the latter the consideration instead of being paid in money is paid in goods or merchandise susceptible of a valuation."* (Italics supplied.)

It would follow from the above definitions of barter that under the most favorable view of defendant's evidence he had the possession of the liquor with the intention to transfer it with the consideration being paid in goods of a similar or like quantity at a future date.

To refute the idea that the Legislature intended that the word "barter" was inserted in the statute but could only be considered in a prosecution for unlawful possession when it was used as a subterfuge for a sale, we call attention to the two statutes relating to the bartering, selling or giving intoxicating liquor to minors. 37 O.S.1951 §§ 3 and 5. In each of those statutes the word "barter" is inserted ahead of of the word "sell" and those statutes read, "It shall be unlawful * * * to barter, sell or give to any minor * * *." Attention is again directed to the fact that the statute penalizes the possession of intoxicating liquor with the intent of violating any of the provisions of the prohibitory laws. It does not state as quoted by counsel for the accused that such possession must be for the purpose of selling, bartering, giving away or otherwise furnishing but the possession of such intoxicating liquor is unlawful when there is an intent to violate any of the prohibitory laws as hereinabove enumerated.

We have carefully examined the instructions which were given. Not an objection or exception was taken to any of the instructions which were given. We think the rule of ejusdem generis as herein-above defined would probably apply in construing the term "or otherwise furnish" and that the "otherwise furnish" would refer to means used to cover up the barter or sale of such intoxicating liquor but it is not necessary to invoke the rule of ejusdem generis insofar as the term "barter" is concerned. It has a definite meaning the same as the word "sale" and we think its insertion in the statute was made by the Legislature to punish the bartering of whiskey and not merely to punish the bartering of whiskey when such barter was a mere subterfuge for a sale. The instructions which were given were fair and adequate.

One other assignment of error is mentioned in the brief of the defendant concerning an alleged improper statement of the County Attorney in his argument to the jury. We have examined the argument to which complaint is made. At the time the statement was made, counsel interposed an objection and the trial court sustained the objection and told the jury to disregard the statement of the County Attorney and not to give it any consideration whatsoever in their deliberation on the case.

In view of the fact that the defendant is an old offender and that the jury in finding him guilty did not sentence him to the penitentiary but only gave him a jail sentence of 60 days and a fine of $150, we cannot believe that the argument complained of affected their verdict.

The defendant is not wholly unknown to this court. Dawson v. State, 90 Okl.Cr. 30, 210 P.2d 209; Dawson v. State, Okl.Cr. 266 P.2d 1007. The judgment and sentence of the District Court of Kiowa County is affirmed.

POWELL, P. J., and BRETT, J., concur.