UNITED STATES of America,
Appellant,

v.

John M. WINTERS, Jr., and Marian M.
Winters, Appellees.

No. 5902.

United States Court of Appeals
Tenth Circuit.

Nov. 13, 1958.

Murrah, Circuit Judge, dissented.

Meyer Rothwacks, Attorney, Department of Justice, Washington, D. C.
(Charles K. Rice, Asst. Atty. Gen., Lee
A. Jackson and A. F. Prescott, Attorneys, Department of Justice, Washington, D. C., B. Hayden Crawford, U. S.
Atty., and Hubert A. Marlow, Asst. U.

S. Atty., Tulsa, Okl., on the brief), for appellant.

Roger S. Randolph, Tulsa, Okl. (Horace D. Ballaine, Tulsa, Okl., on the brief), for appellees.

Before MURRAH, PICKETT and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The question is whether the cost of whiskey bought and used in Oklahoma by a lawyer for the entertainment of clients and prospective clients of the law firm in which he was a member is deductible as an ordinary and necessary business expense within the meaning of Section 162(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 162(a).

In their 1954 joint income tax return, appellees John M. Winters, Jr., a Tulsa lawyer,[1] and his wife claimed as a deductible business expense $301.75 spent for approximately four cases of whiskey delivered to taxpayer's home in Tulsa and used there for entertainment which the trial court found appropriate and helpful in the retention and development of the taxpayer's law business.[2] The trial court also found, and it is not contested here, that it is "the usual practice in the City of Tulsa and in the State of Oklahoma for attorneys-at-law in the general practice to furnish liquor in connection with the entertainment of clients and prospective clients." The deduction was disallowed, the additional tax paid, and suit brought to recover.[3] The court held that the deduction was proper and gave judgment against the United States.

The sole point raised on this appeal is that the allowance of the deduction would be a severe and immediate frustration of the public policy of the state of Oklahoma and, hence, improper.

 Deductions from gross income are a matter of congressional grace.[4] Section 162 of the Internal Revenue Code of 1954[5] allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Entertainment expenses are not mentioned in the Code. To be deductible they must meet the test applied to business expenses generally, that is, the expenditures must be "directly related to the trade or business of the taxpayer."[6]

 There is nothing in the 1954 Code or its predecessors prohibiting the deduction of ordinary and necessary business expenses which violate or frustrate public policy.[7] The disallowance of such expenses on public policy grounds has been established by the courts.[8] In Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 473, 64 S.Ct. 249, 253, 88 L.Ed. 171, the Supreme Court recognized that the federal courts had narrowed the meaning of the language permitting the deduction of ordinary and necessary business expenses "in order that tax deduction consequences might not frustrate sharply defined national or state policies proscribing particular types of conduct" and went on to say that "the mere fact that an expenditure bears a remote relation to an illegal act" does not make it nondeductible. This decision was fol-

---

1. Hereinafter referred to as taxpayer.

2. The gross legal fees received by the law partnership in 1954 were in excess of $300,000. The total amount claimed deductible by the taxpayer for business entertainment was approximately $2,350. The only portion of this which was disallowed was the $301.75 spent for whiskey.

3. The suit also covered a disallowed deduction claimed under § 165(c). The lower court ruled with the taxpayer on such deduction but that ruling is not involved in this appeal.

4. Commissioner of Internal Revenue v. Sullivan, 356 U.S. 27, 28, 78 S.Ct. 512, 2 L.Ed.2d 559.

5. 26 U.S.C. § 162.

6. Knight-Campbell Music Co. v. Commissioner of Internal Revenue, 10 Cir., 155 F.2d 837, 839; Mertens, Law of Federal Income Taxation, Rev.Ed., 1954, Vol. 4, § 25.88.

7. Lilly v. Commissioner of Internal Revenue, 343 U.S. 90, 94, 72 S.Ct. 497, 96 L. Ed. 769.

8. Mertens, supra, Vol. 4, § 25.131.

lowed by Lilly v. Commissioner of Internal Revenue, supra, wherein the court, after quoting language from Heininger, said that the policies frustrated must be national or state policies evidenced by some governmental declaration of them.

During its October, 1957, term the Supreme Court decided three cases bearing on this question. They were Commissioner of Internal Revenue v. Sullivan, 356 U.S. 27, 78 S.Ct. 512, 2 L.Ed.2d 559, Tank Truck Rentals, Inc., v. Commissioner of Internal Revenue, 356 U.S. 30, 78 S.Ct. 507, 2 L.Ed.2d 562, and Hoover Motor Express Co., Inc., v. United States, 356 U.S. 38, 78 S.Ct. 511, 2 L.Ed.2d 568. The Sullivan decision requires the disallowance of a deduction if the allowance is "a device to avoid the consequence of violations of a law, * * * or otherwise contravenes the federal policy expressed in a statute or regulation." [9] The Tank Truck Rentals decision states that "the test of nondeductibility always is the severity and immediacy of the frustration resulting from allowance of the deduction." [10]

■ The question of nondeductibility because of frustration of public policy must be determined by the peculiar facts of each case.[11] While it will not be helpful to review the situations which have or have not resulted in a disallowance of claimed deductions because of frustration of public policy,[12] the litigated cases may be grouped into three major categories, viz.: where the expenditure is payment of a penalty for unlawful conduct,[13] where the expenditure is made in connection with an unlawful activity,[14] and where neither the expenditure nor the business in which it is incurred is unlawful but the allowance of such expenditure as a deduction would contravene public policy.[15]

The taxpayer asserts that the cost of liquor served in his home to clients and prospective clients of the law firm to which he belongs is an ordinary business expense as it accords with the usual practice of Tulsa lawyers and is a necessary expense to develop and retain the business of the firm. The government contests the deduction solely on the ground of frustration of public policy. It does not controvert the taxpayer's contention that the expenditure is directly related to his business. As the case is presented to us, if the expenditure does not frustrate public policy, the taxpayer is entitled to the deduction.

The decision of this court in Finley v. Commissioner of Internal Revenue, 10 Cir., 255 F.2d 128, 134, upholding the disallowance of the cost of whiskey as a business deduction of an Oklahoma taxpayer is not controlling because in that case the taxpayer did not deny that the transactions involving the whiskey were illegal in Oklahoma. In the instant case the taxpayer asserts that his purchase and use of the whiskey did not violate any Oklahoma law.

Oklahoma is a so-called dry state. In 1907 it adopted by vote of its people, and has since retained, as an amendment to its constitution a "prohibition or-

9. 356 U.S. 29, 78 S.Ct. 514.

10. 356 U.S. 35, 78 S.Ct. 510.

11. Commissioner of Internal Revenue v. Heininger, supra, 320 U.S. at page 473, 64 S.Ct. at page 253; Fuller v. Commissioner of Internal Revenue, 10 Cir., 213 F.2d 102, 106.

12. A compilation of pertinent decisions is found in Mertens, supra, footnotes to § 25.131. An earlier analysis of many cases appears in 54 Harvard Law Review 852, et seq.

13. Tank Truck Rentals and Hoover Motor Express Co., both supra.

14. Sullivan, supra. Cf. Cohen v. Commissioner of Internal Revenue, 10 Cir., 176 F.2d 394, 400, where a distinction seems to be made between lawful and unlawful expenditures incurred in an unlawful business.

15. Cf. Textile Mills Securities Corp. v. Commissioner of Internal Revenue, 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249; Harden Mortgage Loan Co. v. Commissioner of Internal Revenue, 10 Cir., 137 F.2d 282, certiorari denied 320 U.S. 791, 64 S.Ct. 206, 88 L.Ed. 476.

dinance."[16] Implementing legislation makes it unlawful to manufacture, import, transport, sell, barter, give away or otherwise furnish intoxicating liquors.[17] Possession of more than one quart of such liquor is made prima facie evidence "of an intention to convey, sell or otherwise dispose of such liquors." [18]

These constitutional and statutory provisions were re-examined in 1954 by the Criminal Court of Appeals in Oklahoma —the court of last resort in criminal matters—in the case of Dawson v. State, Okl.Cr., 273 P.2d 154. The defendant Dawson was charged with the unlawful possession of whiskey. Officers armed with a search warrant found eight pints of whiskey in his home. Evidence for the defense was that he had the whiskey to loan to another individual and expected to receive back the same whiskey, or an equal amount. It was contended that possession of whiskey is lawful in Oklahoma unless there is an intention to sell. The court rejected the argument and affirmed the conviction. Among other things, the court said:[19]

"We have held in many cases that the possession of intoxicating liquor by an individual for his own personal use is not unlawful. * * * However, under the statute, that seems to be the only purpose for which intoxicating liquor might be possessed without violating some provision of the prohibitory laws. It seems readily apparent that at statehood the majority of the people of Oklahoma were in favor of a dry state and the Legislature enacted laws for the suppression of the traffic in intoxicating liquors in accordance with the wishes of a majority of the population. The legislation enacted in pursuance of that policy apparently intended to prohibit the possession of intoxicating liquor for every purpose except for the personal use of the possessor, and the possessor was not legally allowed to convey it from one place in the state to another place."

Thus, the highest Oklahoma court has said that the state policy is to prohibit possession of intoxicating liquor for every purpose "except for the personal use of the possessor." In the instant case the United States district court recognized this rule and held that "the concept of personal use includes the sharing of liquor with one's guests." Such conclusion from the Oklahoma decisions is justified if it is confined to the serving of intoxicating liquor to social guests in the home of the individual who has the necessary possession. While this may seem paradoxical in view of the numerous unlawful acts which necessarily must precede such hospitality, we are bound to accept it as the policy of Oklahoma.

The difficulty is that the taxpayer's claim of deductibility is based on the fact that the liquor was possessed and used for business purposes. By agreement each partner in the firm to which the taxpayer belonged bore personally all entertainment expense incurred by him in Tulsa and relating to firm business. Thus the whiskey in question was used by the taxpayer to obtain a benefit for the partnership of which he was one member. He benefited only to the extent that his share of the partnership profit might be assured or increased.

A personal use of alcoholic liquors for the gratification of social guests is in a different category from the business use of such liquors for the attainment of commercial objectives. The record shows, and the trial court found, that it is the "usual practice" for Tulsa lawyers to furnish liquor when entertaining clients or prospective clients. This custom and usage does not change the policy of Oklahoma. That policy is made by the people who by their vote placed the prohibitory provisions in the state constitution and who, acting through their chosen legislators, are responsible for the implementing legislation.

16. O.S.1951 Vol. 1, p. 135.

17. 37 O.S.1951, §§ 1, 31, and 50.1.

18. 37 O.S.1951, § 82.

19. 273 P.2d 159.

There is and must be a distinction between an ordinary and necessary business expense which is deductible under Section 162 of the 1954 Internal Revenue Code and personal, living or family expenses which are made not deductible by Section 262 of the same code.[20] Indeed, the taxpayer himself has made this distinction because he did not claim as deductible other whiskey purchases made by him during the same year for the use of himself and his wife. Such distinction requires the conclusion that taxpayer's possession of the whiskey, the purchase price of which is claimed to be deductible, was not for the personal use of the possessor and hence was a violation of the state policy expressed in the state constitution and statutes and clearly defined by the highest court of the state.

The problem remains as to whether this frustration of state policy is so severe and immediate as to require the disallowance of the expenditure. This is not a case like either Tank Truck Rentals or Hoover Motor Express Co., supra, where the expenditures claimed as deductions were for fines paid on account of violations of state law. It is not a case like Sullivan in which the expenditure for a legitimate purpose was made in connection with the operation of an illegal business. It is more like Harden Mortgage Loan Co. v. Commissioner of Internal Revenue, supra, wherein expenditures for lobbying, though not illegal, were held to be nondeductible.

Under Oklahoma law the act of purchase was not unlawful.[21] Probably no case will ever arise where deductibility is claimed for an expenditure which in itself is unlawful. However, the expenditure was for an illegal purpose, that is, to acquire possession of the whiskey for a purpose contrary to the Oklahoma statute.[22] The accomplishment of this illegal purpose required the importation of the whiskey into Oklahoma [23] in violation of 18 U.S.C. § 1262 which makes a federal penal offense of the importation of intoxicating liquor into a state which forbids the sale thereof,[24] and also in violation of Oklahoma law.[25] The possession, conveyance and sale of the whiskey by taxpayer's vendor violated Oklahoma law. All of these illegal acts were necessary to the attainment of the objective of the taxpayer which was to develop and retain the business of the law partnership to which he belonged by entertainment which included the serving of alcoholic liquor. The severity of the frustration is not diminished by the fact that the purchase violated no Oklahoma law. The immediacy of the frustration is shown by the fact that a law violation directly preceded and directly followed the expenditure claimed to be deductible.

While the decision in this case is not controlled by Tank Truck Rentals, supra, where the claimed deductions represented fines paid for law violations, it also is not controlled by Sullivan, supra, where deductions for rent and expenses incurred in the conduct of an illegal business were allowed. In Sullivan the court pointed out that the treasury regulations permitted the deduction of the federal excise tax on wagers and that such policy "seems sufficiently hospitable to allow the normal deductions of the rent and wages" necessary to conduct the business. No such hospitality is shown in the instant case as federal law forbids the importation of the liquor into Oklahoma and a pertinent Internal Revenue ruling forbids the deduction.[26]

20. 26 U.S.C. § 262.

21. Brown v. State, Okl.Cr., 266 P.2d 988, 990.

22. Cf. The Lorraine Corporation v. Commissioner of Internal Revenue, 33 B.T.A. 1158, 1166.

23. The whiskey was "bonded liquor" bearing "federal liquor stamps."

24. This statute applies to Oklahoma. General Motors Acceptance Corp. v. United States, 10 Cir., 201 F.2d 732, 734; Jones v. United States, 10 Cir., 258 F.2d 81, 84.

25. 37 O.S.1951, § 50.1.

26. Revenue Ruling 55-307, 1955-1 Cumulative Bulletin, p. 22.

The situation with which we are confronted is unique. Oklahoma in its prohibition of alcoholic liquors stands in almost solitary isolation.[27] That isolation does not detract from its right to establish and maintain a state policy of its own. The wisdom of the policy is for determination by the people of Oklahoma, not this court. The United States Supreme Court has said that such state policy may not be frustrated by the allowance of deductions from federal income tax for expenditures which have a severe and immediate adverse effect thereon. The fact that the disallowance of such deductions will result in a "serious punitive consequence" [28] which could not occur in other states is immaterial. We are concerned solely with Oklahoma and its policy. We are not concerned with the policy of another state or with what a small group would seek to establish as Oklahoma policy by a claim of custom and usage.

■ This is not a case of a taxpayer becoming innocently involved in an illegal transaction. Rather it is one where a taxpayer deliberately and knowingly patronized an illegal business. By reason of such patronage there was a severe and immediate frustration of state policy. This requires disallowance of the claimed deduction.

The judgment is reversed to the extent that it orders the recovery of any tax paid as the result of the disallowance of the deduction claimed for the whiskey expenditures.

MURRAH, Circuit Judge, dissenting.

Admittedly, the decisive question is whether these expenditures, otherwise deductible as ordinary and necessary business expenses under Section 162(a) of the Internal Revenue Code of 1954, are nevertheless nondeductible in Oklahoma

because they frustrate a sharply defined public policy of that state with respect to the sale or disposition of intoxicating liquor. While the deductibility of expenses incurred in this manner is concededly a matter of legislative grace, their nondeductibility in Oklahoma for reasons of public policy is assuredly a matter of judicial fiat. No considerations of national public policy forbid the deduction.

We know that not every business expense which is in some way tainted with illegality is per se rendered nondeductible. Commissioner of Internal Revenue v. Sullivan, 356 U.S. 27, 78 S.Ct. 512, 2 L. Ed.2d 559. The test of nondeductibility is one of degree of the severity and immediacy of the frustration of a sharply defined public policy of a state. Tank Truck Rentals, Inc., v. Commissioner, 356 U.S. 30, 78 S.Ct. 507, 2 L.Ed.2d 562.

I agree with the distinguished Oklahoma trial judge that the allowance of the claimed deduction does not severely and immediately frustrate any sharply defined public policy of Oklahoma.

It is conceded that under Oklahoma law the purchase of the liquor was not a crime, and the expenditure sought to be deducted here was not itself unlawful. It is said, however, that the taxpayer here "deliberately and knowingly" patronized an illegal business resulting in a "severe and immediate frustration of state policy." The immediacy of the frustration is said to lie in the fact that "a law violation directly preceded and directly followed the expenditure claimed to be deductible." Nondeductibility is thus made to rest upon a critical interpretation of Oklahoma law to the effect that the furnishing of liquor to business guests is a violation of the prohibitory laws. Relying on Dawson v. State, Okl.Cr., 273 P.2d 154, and allied cases, the majority draw a distinction between the possession of

27. According to CCH Liquor Control Law Service the only states having statewide prohibition against alcoholic liquors are Oklahoma and Mississippi.

28. Cf. Commissioner of Internal Revenue v. Heininger, supra, 320 U.S. at page 474, 64 S.Ct. at page 254.

liquor in Oklahoma for personal use and business purposes.

From these decisions, it does indeed seem logical to conclude that the Oklahoma courts would sustain a criminal charge for serving intoxicating liquor to business guests in one's own home. It is significant for our purposes, however, that as far as we know, no such charge has ever been reported in more than fifty years of prohibition in Oklahoma. It seems only fair to assume, therefore, that at the enforcement level, at least, the prohibition laws have not been construed so severely.

When the Oklahoma law is thus construed in the context of human conduct, it is extremely doubtful that the taxpayer has severely and immediately frustrated any very well defined public policy of Oklahoma with respect to the prohibition laws. As one living in the state since the very inception of the law, and as one claiming some acquaintance with the mores of the community, I certainly cannot say so.

This is not to say that the letter of the law is subordinate to its observance so that a law honored in its breach does not reflect public policy. It is to say that the law is interpreted not only by the courts, but also by the mores of the community wherein it is effective. Indeed, the people make the law, and by their conduct construe it to reflect the public policy of the state.

This transaction does not bear the stigmatism or the culpability of unlawful influence as in Finley v. Commissioner, 10 Cir., 255 F.2d 128; Harden Mortgage Loan Co. v. Commissioner, 10 Cir., 137 F.2d 282; Cohen v. Commissioner, 10 Cir., 176 F.2d 394. Certainly when measured in degrees of frustration case by case, the frustration of state policy here is no more severe or immediate than the illegal expenditure for rent on a gambling establishment held deductible in Sullivan.

I would affirm the trial court.