EDWARD W. BOUCHER AND GLORIA D. BOUCHER, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9878–77.     Filed August 6, 1981.

*George Constable*, for the petitioners.
*Thomas N. Tomashek*, for the respondent.

FEATHERSTON, *Judge*: Respondent determined deficiencies in petitioners' Federal income taxes for 1974 and 1975 in the respective amounts of $5,965 and $12,717. The only issue for decision is whether a State statute prohibiting the discounting

---

[4]See *Woolf v. United States*, 578 F.2d 1103, 1105 (5th Cir. 1978).

of insurance premiums by insurance agents was "generally enforced," within the meaning of section 162(c)(2),[1] during the years in question.

## FINDINGS OF FACT

Petitioners Edward W. Boucher (hereinafter petitioner) and Gloria D. Boucher filed joint Federal income tax returns for 1974 and 1975 with the Internal Revenue Service Center, Ogden, Utah. At the time the petition was filed, they resided in Seattle, Wash.

During 1974 and 1975, petitioner was an insurance agent licensed by the State of Washington. He was employed by the Safeco Insurance Co. (Safeco) to sell life insurance.

Petitioner's gross receipts from his employment as an insurance agent during 1974 and 1975 were $39,196.50 and $75,743.17, respectively. In reporting these gross receipts on his Federal income tax returns for 1974 and 1975, petitioner deducted from them the amount of "premium discounts" that he had given to customers to whom he had sold life insurance. The premium discounts, totaling $29,371 for 1974 and $39,263 for 1975, had been given in order to induce customers to buy insurance policies through petitioner. Petitioner gave the discounts by making premium payments to Safeco on behalf of his customers or by making payments directly to the customers.

It is generally unlawful in the State of Washington for an insurance agent to offer a rebate or discount of an insurance premium as an inducement to purchase insurance.[2] A violation of this prohibition against rebates or discounts may result in the revocation of an insurance agent's license and, in

---

[1]All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.

[2]Wash. Rev. Code Ann. sec. 48.30.140 (1961), provides in pertinent part as follows:

48.30.140 Rebating. (1) Except to the extent provided for in an applicable filing with the commissioner then in effect, no insurer, general agent, agent, broker, or solicitor shall, as an inducement to insurance, or after insurance has been effected, directly or indirectly, offer, promise, allow, give, set off, or pay to the insured or to any employee of the insured, any rebate, discount, abatement, or reduction of premium or any part thereof named in any insurance contract, or any commission thereon, or earnings, profits, dividends, or other benefit, or any other valuable consideration or inducement whatsoever which is not expressly provided for in the policy.

addition, a fine and a term of imprisonment may be imposed on the agent.[3]

At the time of the trial, Robert E. Johnson (Johnson) had been the Deputy Insurance Commissioner in the Washington State Insurance Commissioner's office since April 1, 1969. In that capacity, Johnson was involved with the enforcement of the statute prohibiting the discounting of insurance premiums by insurance agents (hereinafter the rebate statute).

During 1974 and 1975, Johnson's office had only one investigator who was responsible for conducting all investigations pertaining to the conduct of insurance agents, brokers, solicitors, and adjusters. The investigator concentrated his efforts on cases involving swindles against the insurance consumer. Violations of the rebate statute, which tend to harm competitors of the violator rather than the insurance consumer, received less attention. Although Johnson's office did not have a "tolerance policy" as to violations of that statute, the investigator did not make any independent attempt to discover violations of it. Accordingly, Johnson's office would generally become aware of violations of the rebate statute only upon receiving a complaint from a competitor of the violator.

During the years in question, if Johnson's office had received a complaint concerning a violation of the rebate statute, standard procedure dictated that an investigation be made to determine whether a violation had in fact occurred. If the investigator determined that there had been a violation, he would then prepare a report recommending appropriate sanctions and send it to Johnson for review.

As of the time of trial, no reports dealing with violations of the rebate statute had been submitted to Johnson for review at any time during his tenure as Deputy Insurance Commissioner, and he was not aware of how many investigations there

[3]Wash. Rev. Code Ann. secs. 48.30.160 and 48.01.080 (1961), provide as follows:

48.30.160 Rebating—License revocation. The commissioner shall revoke the certificates of authority or licenses of any insurer, general agent, agent, broker, or solicitor guilty of violating any provision contained in RCW 48.30.140 and 48.30.150. No such insurer, general agent, agent, broker, or solicitor shall, following any such revocation, be eligible for a certificate of authority or license within one year after such revocation.

48.01.080 Penalties. Violation of any provision of this code is punishable by a fine of not less than ten dollars nor more than one thousand dollars, or by imprisonment for not more than one year, or both fine and imprisonment, in addition to any other penalty or forfeiture provided herein or otherwise by law.

had been involving rebating. With the exception of an investigation in 1972 that ended because the individual involved ceased to be an insurance agent, Johnson has not been exposed to any case concerning a clear violation of the rebate statute. During his tenure, there has been no criminal prosecution for a violation of the rebate statute. Further, his office has not handled any cases in which an insurance agent's license was revoked for such a violation. Johnson's experience in his office indicates that there have been relatively few cases involving violations of the rebate statute because there are relatively few violations of it.

Johnson's office regularly receives written inquiries as to whether a given set of facts constitutes a violation of the rebate statute. In response, advisory letters are issued stating whether or not the given facts appear to involve rebating.

In the notice of deficiency, respondent determined that the premium discounts allowed by petitioner to his customers in 1974 and 1975 were not deductible under section 162.

## OPINION

In general, section 162(a) allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Section 162(c)(2), which qualifies this general rule by disallowing a trade or business expense deduction for certain illegal payments, however, provides in pertinent part as follows:

(2) OTHER ILLEGAL PAYMENTS.—No deduction shall be allowed under subsection (a) for any payment * * * made, directly or indirectly, to any person, if the payment constitutes an * * * illegal payment * * * under any law of a State (but only if such State law is generally enforced), which subjects the payor to a criminal penalty or the loss of license or privilege to engage in a trade or business. * * * The burden of proof in respect of the issue, for purposes of this paragraph, as to whether a payment constitutes an * * * illegal payment shall be upon the Secretary to the same extent as he bears the burden of proof under section 7454 (concerning the burden of proof when the issue relates to fraud).

In defining the term "generally enforced" as it is used in section 162(c)(2), section 1.162–18(b)(3), Income Tax Regs., provides that—

a State law shall be considered to be generally enforced unless it is never enforced or the only persons normally charged with violations thereof in the

State * * * enacting the law are infamous or those whose violations are extraordinarily flagrant. For example, a criminal statute of a State shall be considered to be generally enforced unless violations of the statute which are brought to the attention of appropriate enforcement authorities do not result in any enforcement action in the absence of unusual circumstances.

Relying upon section 162(c)(2), respondent contends that petitioner may not deduct the insurance premium discounts that he gave to his customers during 1974 and 1975 in violation of the Washington rebate statute. Petitioner does not dispute that the premium discounts are deductible only as trade or business expenses under section 162(a),[4] nor does he dispute that the discounts were illegal under the terms of the rebate statute. However, petitioner contends that the rebate statute was not "generally enforced" during 1974 and 1975 and that, therefore, the premium discounts are deductible. Although it is a close question on the record before us, we think respondent has shown by clear and convincing evidence[5] that the rebate statute was "generally enforced" during the years in question.

The regulations under section 162(c)(2), quoted above, provide that a State law shall be considered to be "generally enforced" unless it is never enforced or is enforced only with respect to infamous persons or persons whose violations are extraordinarily flagrant.[6] Emphasizing that Johnson's office made no independent attempt to discover violations of the rebate statute and that there is no evidence of any criminal prosecutions or license revocations resulting from violations of that statute, petitioner argues that this is a case involving a statute that was never enforced. We disagree.

It is true, as petitioner emphasizes, that Johnson's office made no independent attempt to detect violations of the rebate statute. However, it appears that this may well have been due to a lack of adequate manpower and the resultant necessity of

---

[4]In this connection, see Alex v. Commissioner, 70 T.C. 322 (1978), affd. 628 F.2d 1222 (9th Cir. 1980), involving a "generally enforced" California statute on premium discounts or rebates and holding that such discounts or rebates were not adjustments to the price of the insurance but were trade or business expense deductions from gross income precluded by sec. 162(c)(2); Kreisberg v. Commissioner, T.C. Memo. 1979–420.

[5]See sec. 162(c)(2); Rule 142(b), Tax Court Rules of Practice and Procedure.

[6]Petitioner has made no argument that these regulations are unreasonable or plainly inconsistent with the statute.

choosing which violations of the Washington insurance laws would receive priority in investigations. Violations of the rebate statute may have been given a low priority in terms of discovering such violations,[7] but it does not follow that the rebate statute was never enforced.

Generally speaking, law enforcement is thought of as encompassing the prevention of, as well as the detection of and punishment for, violations of the law. Johnson testified that his office regularly issues advisory letters in response to inquiries whether various practices would constitute violations of the rebate statute. Obviously, by apprising insurance agents and other interested parties of the legality of a proposed course of action vis-a-vis the rebate statute, these advisory letters would go far in serving to prevent violations of the statute.

Johnson further testified that his office did not have a "tolerance policy" as to violations of the rebate statute. In addition, he described standard investigatory procedures that would have been implemented had a violation of the statute been brought to the attention of his office during the years in question. In light of this testimony, and notwithstanding the fact that there is no evidence of any criminal prosecutions or license revocations under the rebate statute, we are convinced that the rebate statute would have been enforced during 1974 and 1975 if a violation had been "brought to the attention of appropriate enforcement authorities." Sec. 1.162–18(b)(3), Income Tax Regs.

We do not think the absence of an aggressive criminal prosecution or license revocation program on the part of the State Insurance Commissioner is sufficient to show that the rebate statute was not "generally enforced." Prior to 1969, the Supreme Court declared that "the test of nondeductibility [of disputed payments] always is the severity and immediacy of the frustration [of public policy] resulting from allowance of the deduction." *Tank Truck Rentals, Inc. v. Commissioner*, 356 U.S. 30, 35 (1958). As a general rule, expenditures which involved State law violations were held nondeductible on the theory that the law will not recognize the necessity of

---

[7]In this connection, we note that Johnson believed that there were few violations of the rebate statute.

engaging in illegal courses in the conduct of a business. See, e.g., *Boyle, Flagg & Seaman, Inc. v. Commissioner*, 25 T.C. 43, 50 (1955). On the other hand, some State laws become "dead letters" in the sense that State authorities charged with their enforcement take no action on violations called to their attention, and the courts held that payments in violation of such laws did not frustrate public policy. *Sterling Distributors, Inc. v. Patterson*, 236 F. Supp. 479, 483–484 (N.D. Ala. 1964); *Stacy v. United States*, 231 F. Supp. 304 (S.D. Miss. 1963).[8]

In 1969, the Congress sought to limit the denial of deductions for illegal payments to four carefully defined categories. In the case of illegal kickbacks, rebates, or discounts, the deduction was not to be denied unless the taxpayer was convicted on a criminal charge arising from the illegal transaction. S. Rept. 91–552, 1969–3 C.B. 597. In 1971, the Congress indicated that it was concerned that the 1969 act unduly restricted the denial of deductions in some cases and, in order to expand the areas in which deductions were to be denied, revised the provisions of section 162(c)(2) (quoted above insofar as they are here pertinent) to deny deductions for payments which are illegal under a "generally enforced" State law which subjects the payor to a criminal penalty or loss of license or privilege to engage in a trade or business. S. Rept. 92–437, 72–1 C.B. 559, 599. We think the objective was to restore a modified form of the pre–1969 rule. Section 162(c)(2) denies deductions for expenditures which frustrate the public policy underlying certain State laws, but only if the State law is generally enforced—i.e., has not become a "dead letter."

We think respondent has made the requisite showing that the Washington rebate statute was generally enforced within the meaning of section 162(c)(2). It was not in 1974 and 1975 a "dead letter" even though the State did not have an aggressive program to enforce it. Accordingly, we hold that the premium

---

[8]In *United States v. Winters*, 261 F.2d 675, 677 (10th Cir. 1958), cert. denied 359 U.S. 943 (1959), the court summarized the situations in which deductions had been disallowed because of frustration of public policy as follows:

"the litigated cases may be grouped into three major categories, viz.: where the expenditure is payment of a penalty for unlawful conduct, where the expenditure is made in connection with an unlawful activity, and where neither the expenditure nor the business in which it is incurred is unlawful but the allowance of such expenditure as a deduction would contravene public policy. [Fn. refs. omitted.]"

discounts given by petitioner in 1974 and 1975 are not deductible.

To reflect the foregoing,

*Decision will be entered for the respondent.*